**STATE of Minnesota, Respondent,**

**v.**

**David Brian SUTHERLIN, Appellant.**

**No. C1–85–1967.**

Supreme Court of Minnesota.

Nov. 21, 1986.

---

C. Paul Jones, State Public Defender, J. Christopher Cuneo, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

COYNE, Justice.

This is a direct appeal by David Brian Sutherlin from two judgments of conviction of first-degree murder, one based on the premeditated shooting death of Perry Miller, the other based on the unintended death of a bystander, Vincent Jones, who was hit by a bullet meant for Miller. Defendant raises a large number of issues relating to the sufficiency of the evidence, the admission of evidence, and the adequacy of the trial court's instructions. We affirm.

Defendant was involved in a long-standing feud with Miller. On the evening of April 15, 1985, defendant and Miller became involved in a brief shoving match at Sylvia's Bar in downtown St. Paul. The bartender separated the two, ordering defendant to leave and intending to require Miller to leave by a side door after defendant and his companions left the area. The state's evidence established that both defendant and his brother, Reggie, who was with defendant, were extremely angry and that both made statements outside the bar that they were going to kill Miller. Reggie got a gun out of the trunk of his car, went to the window of the bar and made threatening gestures toward Miller. However, Michael Messenger, who knew both defendant and Reggie and also was a friend of Miller, eventually persuaded Reggie to put the gun away. Defendant then instructed his girl friend to drive to his residence and get his pistol, a .22 caliber automatic. When she returned and gave the gun to defendant, defendant went into the bar, confronted Miller and began shooting. The witnesses uniformly testified that Miller was unarmed, that he made no sudden moves, and that when defendant began shooting at him he put his hand up in self defense and started turning and backing off. Defendant fired five shots. Miller was hit by four bullets but one of the bullets caused two wounds, making a total of five wounds. Most of the wounds were in the shoulder area, but one, the fatal wound, was in the heart. Jones, a musician in a band playing at the bar, died from a shot in the chest.

Defendant fled the scene immediately. Police arrested him later that night after seeing him leave his residence and climb into the trunk of the car of a friend, who had agreed to drive defendant to a different location. Defendant's brief statement to the police that night was suppressed but later was admitted to impeach defendant's trial testimony. In the statement defendant said that he hid in the trunk because three men were out to get him. Asked about the shooting at the bar, he said that he was aware of it, that three men there were out to get him, that he just wanted to get his hat and leave, and that someone—he didn't know who—started shooting and he left. Later that morning defendant gave another brief statement before invoking his right to silence; in the statement he said that he might know Miller, the victim, that the name sounded familiar. At trial defendant denied that he sent his girl friend to get his gun. He claimed that he went back into the bar to look for his car keys and that when his back was turned to Miller someone shouted, "Watch it!" He testified that he grabbed the gun from a friend and turned and shot Miller in the shoulder once or twice. He claimed that the extra shots were fired by someone who wrestled the gun from him. (Messenger testified that he grabbed the gun and attempted to shoot defendant, but the gun was empty). Defendant denied any intent to kill Miller and claimed that he shot only to injure and only in the belief that Miller was going to shoot him.

■ 1. Defendant contends that the evidence was insufficient to establish (a) premeditation and intent, (b) lack of justification, and (c) causation. We disagree.

(a) The jury was entitled to credit the testimony of the state's witnesses and reject defendant's testimony. The state's evidence clearly was sufficient to establish premeditation and intent to kill Miller. Defendant could be properly found guilty of first-degree murder in the death of Jones also, even though defendant did not premeditate Jones' death, because the statute, Minn.Stat. § 609.185, incorporates the tra-

ditional doctrine of "transferred intent." Specifically, the statute provides that one is guilty of first-degree murder if one "[c]auses the death of a human being with premeditation and with intent to effect the death of the person *or of another.*" See *State v. Gowdy,* 262 Minn. 70, 113 N.W.2d 578 (1962) (making it clear that the defendant need not have premeditated the death of the specific person who was killed, as long as he premeditated the death of someone).

Defendant's contention that his intoxication precluded a finding that he premeditated and intended to kill is without merit. Although defendant was intoxicated at the time of the shooting, he did not claim that it deprived him of the capacity to premeditate or intend to kill. Defendant's claim was that he intended to shoot Miller in the shoulder in the reasonable belief that if he did not do so Miller would shoot him.

(b) The testimony of the state's witnesses negated self-defense.

■ (c) Defendant claims that the state did not establish that he fired the shots that killed Miller and Jones; he argues that Messenger was an intervening cause and that his wresting of the gun from defendant caused the gun to fire the bullets that killed Miller and Jones. If defendant had reasonably and justifiably fired the gun in self-defense and if Messenger had then grabbed the gun and caused it to discharge and kill Miller and Jones, then defendant could not have been found guilty of premeditated intentional murder in killing the two. However, defendant did not act in self-defense. Instead, he began firing the gun after premeditating the death of Miller. Under the circumstances, even if Messenger's grabbing the gun could be characterized as an intervening cause of the death of Miller and Jones, defendant still could properly be found guilty of first-degree murder because his premeditated conduct set in motion the events that caused Messenger to intervene. All that is required is that the defendant's premeditated shooting of Miller was a "substantial causal factor" in the deaths—*State v. South-*

*ern,* 304 N.W.2d 329, 330 (Minn.1981)—and the state's evidence clearly showed that it was a "substantial causal factor." Indeed, we believe that the evidence sufficiently established that defendant's conduct was the sole causal factor in both deaths.

2. Many of the other issues that defendant raises in his brief were not raised in the trial court and, in our opinion, do not merit detailed discussion. These issues are:

■ (a) Did the prosecutor by his cross-examination of defendant improperly suggest that defendant had a burden to produce evidence? Relevant cases include: *State v. Race,* 383 N.W.2d 656 (Minn.1986); *State v. Tungland,* 281 N.W.2d 646 (Minn. 1979); *State v. Kirvelay,* 311 Minn. 201, 248 N.W.2d 310 (1976). In *State v. Dooley,* 319 N.W.2d 33, 34 (Minn.1982), a case raising a similar issue, we said that as a general rule we will not consider such an issue on appeal if defense counsel failed to object in the trial court. Nothing in the record suggests that this general rule should not be followed here.

(b) Did the prosecutor, in eliciting certain evidence, suggest to the jury that defendant had a prior criminal record? Relevant cases include: *State v. McAdoo,* 330 N.W.2d 104 (Minn.1983), and *State v. Haglund,* 267 N.W.2d 503 (Minn.1978). There is no record of objection by defense counsel.

■ (c) Did the prosecutor act improperly in cross-examining a defense witness and in eliciting extrinsic evidence to impeach the witness' answers? Our decision in *State v. Waddell,* 308 N.W.2d 303, 304 (Minn.1981), supports the use of the balancing approach of Minn.R.Evid. 403 in determining whether to allow contradiction by independent or extrinsic evidence. Defense counsel objected to only one of the questions on cross-examination and then only on a ground not related to any potential of the evidence to cause unfair prejudice to the defense; the trial court sustained that objection. Defense counsel did not object when the prosecutor elicited the rebuttal evidence that contradicted the testimony of defendant's witness.

■ (d) Did the prosecutor improperly ask defendant his opinion of the credibility of the state's witnesses? On cross-examination of defendant, the prosecutor read off a list of the names of the state's witnesses whose testimony was inconsistent with that of defendant and asked defendant if he felt that they had any reason to lie under oath; defendant responded that they did because each of them more or less knew one of the two victims. Defense counsel objected to one of the questions, one that asked if defendant felt that all of the people had conspired to come into court and lie, and the trial court sustained that objection. The trial court presumably would have sustained objections to other questions that were argumentative in nature if defense counsel had objected, but defense counsel did not object. Any error was not plain error or prejudicial error under Minn.R.Evid. 103.

■ (e) Were the trial court's instructions on "transferred intent" and on causation inadequate? Defendant did not request any particular instructions on intent and causation or object to the trial court's instructions, which were those recommended by 10 Hodsdon, Minnesota Practice—CRIMJIG 11.02 and 11.03 (2d ed. 1085). No plain error was committed.

(f) Did the trial court err in failing to instruct on voluntary intoxication? Defendant did not offer his intoxication as an explanation of his actions nor did he request an instruction on intoxication. Therefore, the trial court's failure to instruct on intoxication was not erroneous. *State v. Rainey,* 303 Minn. 550, 226 N.W.2d 919 (1975); *State v. Carson,* 300 Minn. 527, 219 N.W.2d 88 (1974); *State v. Tellock,* 273 Minn. 512, 142 N.W.2d 64 (1966).

■ (g) Did the trial court err in failing to submit any lesser offenses other than second-degree intentional murder? The lesser offenses mentioned by defendant in his brief—felony-murder and depraved-

mind murder—are lesser offenses under Minn.Stat. § 609.04. Whether the trial court properly *could* have submitted them depends on whether the evidence was such that the jury rationally could have acquitted defendant of the charged offense and second-degree intentional murder but found him guilty of felony-murder or depraved-mind murder. The general rule is that although a trial court is free to submit lesser offenses without a request if the evidence justifies submission, a defendant who does not request submission or object to nonsubmission generally cannot obtain a new trial on this ground. *State v. Stapek*, 315 N.W.2d 603 (Minn.1982); *State v. Berry*, 309 N.W.2d 777 (Minn.1981); *State v. Wybierala*, 290 N.W.2d 603 (Minn.1980). This rule applies here.

3. One issue, that raised by the prosecutor's elicitation of evidence that defendant exercised his right to silence, is of sufficient importance in this case that we will discuss it even though it was not raised in the trial court. During the direct examination of the officer who questioned defendant after defendant had sobered up, the prosecutor asked the officer if he had informed defendant of his rights and then asked the officer what he told defendant. The officer recounted what defendant told him, then added, "I then went on and told him that a band member also had been shot and killed. He remained silent and did not want to answer any more questions." In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that a prosecutor's use of a criminal defendant's post-*Miranda*-warning silence to impeach his exculpatory testimony at trial violates due process.[1] The continuing viability of *Doyle* was recently confirmed in *Wainwright v. Greenfield*, —— U.S. ——, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), where a unanimous court held that the use of the defendant's post-arrest and post-*Miranda*-warning silence as evidence of his sanity violated due process.

In this case defense counsel did not object or request a curative instruction and the strength of the state's evidence was such that it is extremely unlikely that the revelation played a significant role in the jury's finding defendant guilty of premeditated murder. Defendant's testimony was impeached in a number of ways, including by contrast with inconsistent statements he made to the police. *State v. Stigen*, 295 N.W.2d 382 (Minn.1980); *State v. Hofmaster*, 288 N.W.2d 218 (Minn.1979). However, we again emphasize that a prosecutor has an obligation to caution his own witnesses to avoid testifying about the defendant's invocation of his right to silence in circumstances such as these. We can envision cases arising in which the elicitation of such evidence would constitute prejudicial error requiring a new trial notwithstanding the defense counsel's failure to object.

4. The two remaining issues raised by defendant were properly raised in the trial court. The first of these is whether the trial court erred in allowing the state on rebuttal to elicit testimony from a police officer as to the contents of a key prosecution witness' statement to the police.

As we stated earlier, one of the key witnesses for the state was Michael Messenger, the man who was a friend of Miller and an acquaintance of defendant and who attempted to act as peacemaker. Messenger testified on direct concerning threats by defendant to kill Miller. On cross-examination defense counsel impeached this testimony by getting Messenger to admit that he had not mentioned this when he talked with the police. Later the prosecutor called an officer who had questioned Messenger and he was permitted to testify, over a hearsay objection by defense coun-

---

**1.** In *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Court held that the constitution does not bar the use of a defendant's prearrest silence to impeach his exculpatory testimony where the police did nothing to induce the defendant to remain silent. In *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Court ruled that the constitution does not bar the use of post-arrest silence to impeach the defendant's exculpatory testimony where the police gave no *Miranda* warning.

sel, that Messenger told him that he heard defendant threaten to kill Miller.

■ Minn.R.Evid. 801(d)(1)(B) allows the trial court to admit as substantive evidence (rather than just as corroborative evidence) a prior statement of a witness that is consistent with his testimony if it rebuts an express or implied charge against him of recent fabrication or improper influence or motive. Minnesota cases applying the rule include *State v. Lucas*, 372 N.W.2d 731 (Minn.1985); *State v. Gardner*, 328 N.W.2d 159 (Minn.1983); *State v. Arndt*, 285 N.W.2d 478 (Minn. 1979); *Jensen v. State*, 278 N.W.2d 752 (Minn.1979). Impeachment of the witness and an imputation of fabrication are preconditions to substantive admissibility of the prior statement under the rule. But the rule does not remove the trial court's considerable pre-rules discretion to admit prior consistent statements of a witness for the nonsubstantive nonhearsay purpose of corroborating his testimony or of rehabilitating the witness. 3 and 4 J. Weinstein & M. Berger, Weinstein's Evidence—United States Rules §§ 607[08] and 801(d)(1)(B)[01] (1985); *State v. Gardner, supra; State v. Arndt, supra.* In his cross-examination of Messenger, defense counsel did imply to the jury that Messenger had fabricated the testimony about defendant's having threatened to kill Miller. Therefore, we believe that the trial court did not abuse its discretion under the rule in admitting the prior statement of Messenger. In any event, the prior statement clearly was admissible for the purpose of rehabilitating Messenger as a witness; he simply forgot that he had made the statement to the police and allowing the testimony merely corrected the erroneous impression created by the cross-examination.

■ 5. The other issue that defendant properly raised in the trial court is whether the trial court erred in letting the prosecutor use a suppressed statement by the defendant to the police to impeach his exculpatory testimony. The trial court suppressed defendant's first statement to the police, the one made when he was arrested and appeared intoxicated, on the ground that the state failed to meet its burden under the *Miranda* decision of showing a knowing, voluntary and intelligent waiver of the *Miranda* rights. Contrary to defendant's argument, the trial court did not suppress the statement as a coerced, involuntary statement. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) summarizes the use of suppressed statements as follows: "Statements made by a defendant in circumstances violating the strictures of *Miranda* * * * are admissible for impeachment if their 'trustworthiness * * * [sic] satisfies legal standards' * * * [b]ut *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law 'even though there is ample evidence aside from the confession to support the conviction.'" *Id.* at 397–98, 98 S.Ct. at 2416 (emphasis in the original) (citations omitted). Defendant's statement to the police shortly after his arrest may have been in violation of *Miranda* but the statement certainly was the product of a rational intellect and a free will and was not coerced by the police. Indeed, defendant's claim that the statement was involuntary is inconsistent with his testimonial claim that at the time of the shooting he acted reasonably in self-defense.

In summary, we conclude that defendant received a fair trial and was properly convicted of two counts of first-degree murder.

Affirmed.