**D'Elegance D. SUTHERLIN, petitioner, Appellant,**

**v.**

**STATE of Minnesota, Respondent.**

**No. C7–97–599.**

Supreme Court of Minnesota.

Jan. 22, 1998.

D'Elegance D. Sutherlin, Stillwater, pro se.

Hubert H. Humphrey III, Atty. Gen., Susan Gaertner, Ramsey County Atty., Darrell C. Hill, Asst. Ramsey County Atty., for respondent.

## OPINION

ANDERSON, Justice.

Petitioner D'Elegance D. Sutherlin, f/k/a David Brian Sutherlin, was convicted of two counts of first-degree murder for the April 15, 1985 barroom shootings of Perry Miller and Vincent Jones. Sutherlin was sentenced to two concurrent life terms. Three months after his convictions, Sutherlin appealed to this court, claiming, among other issues, that the evidence was insufficient to support his convictions, that several witness statements

were improperly admitted into evidence, and that the jury instructions were inadequate. *State v. Sutherlin,* 396 N.W.2d 238, 240–43 (Minn.1986). We affirmed the convictions. *Id.* at 243.

Nearly ten years later, Sutherlin filed a petition claiming that he has discovered new evidence that undermines the validity of his convictions. He also argues that his constitutional rights were violated by actions at trial and now by the garnishment of his prison wages. The postconviction court concluded that Sutherlin was not entitled to relief, denied his request for an evidentiary hearing, and dismissed the petition. Sutherlin filed a notice of appeal with this court, raising the same arguments and contending that the postconviction court erred by failing to hold an evidentiary hearing. We affirm.

Sutherlin and Perry Miller were longtime adversaries. On the evening of April 15, 1985, the two men got into a fight at Sylvia's Bar in St. Paul, Minnesota. The fight was broken up, and Sutherlin left the bar. Sutherlin testified that he returned shortly thereafter to retrieve his keys. Upon his return, he heard someone say "watch it," and he then saw Miller spin around. Believing that Miller had a gun and was about to kill him, Sutherlin stated that he pulled his own gun and shot at Miller. Sutherlin further testified that someone then tried to grab his gun from his hand and that several more shots were fired.

Miller was hit four times and died of a gunshot wound to the chest. A fifth bullet killed Vincent Jones, a member of Lust, the band playing at the bar that evening. After the shooting, Sutherlin again left the bar, this time moments before the police arrived. After speaking with several witnesses, the police quickly decided that Sutherlin was their prime suspect. Later that same evening, the police received a report that another officer saw someone get into the trunk of a Cadillac. Following this lead, the police found the Cadillac near Mounds Boulevard in St. Paul and pulled it over. The driver exited the Cadillac and the police opened the trunk. Sutherlin was hiding inside, and the police arrested him.

Sutherlin was charged and indicted for the murders of Miller and Jones, and the court appointed an attorney to represent him. Sutherlin's pretrial hearing took place on July 2, 1985, and his jury trial began one week later, on Tuesday, July 9. Many eyewitnesses testified at trial that they saw Sutherlin shoot Miller and Jones. After six days of testimony, both the prosecution and defense rested. The next day, July 18, 1985, the jury found Sutherlin guilty of two counts of first-degree murder. The court sentenced Sutherlin to two concurrent life terms. Three months later, Sutherlin filed a direct appeal with this court, arguing, among other issues, that the evidence was insufficient to support the convictions, that several statements were improperly admitted, and that the jury instructions were inadequate. *Sutherlin,* 396 N.W.2d at 240–43. A more detailed summary of the facts underlying Sutherlin's conviction can be found in our previous opinion. *Id.* at 239–40.

On Sutherlin's direct appeal, we specifically addressed three of the issues raised, but did not consider the other issues raised because Sutherlin's attorney failed to raise those issues at trial. *Id.* at 241–42. First, we decided that it was not prejudicial error for the prosecutor to elicit testimony about Sutherlin's exercise of his right to remain silent because it was extremely unlikely that the statement in question played a significant role in the jury's findings. *Id.* at 242. Second, we decided that the district court properly admitted testimony about a prior consistent statement of Michael Messenger which was introduced to rehabilitate Messenger after defense counsel implied that his testimony was fabricated. *Id.* at 243. Third, we decided that the district court properly admitted for impeachment purposes a statement Sutherlin made to the police. *Id.* We concluded that even though the statement may have been made in violation of Sutherlin's *Miranda* rights and was thus inadmissible for substantive purposes, the statement was made voluntarily and was admissible for impeachment purposes. *Id.* We held that Sutherlin received a fair trial and affirmed his convictions. *Id.*

Sutherlin later filed a petition for habeas corpus, which the federal district court denied. Sutherlin remains in prison and works for MinnCor Industries, Inc., a private industry that hires prison inmates to manufacture its goods. The state currently garnishes 42% of his wages to pay for the expenses of his confinement and another 10% for a victim-aid fund.

Nearly ten years after we affirmed his convictions, Sutherlin filed this petition for postconviction relief and requested an evidentiary hearing. Sutherlin claims that he has discovered new evidence that undermines the validity of his convictions. Additionally, he raises three trial-related issues. First, he argues that the state withheld discovery by failing to provide him with a copy of Miller's criminal record and the police reports from the night of his arrest. Second, he claims that the court's failure to grant a continuance in order for him to obtain private counsel violated his right to due process. Third, he argues that his Sixth Amendment rights were violated by ineffective assistance of trial counsel. Sutherlin also contends that he received ineffective assistance of appellate counsel and that the garnishment of his prison wages violates his constitutional rights.

The postconviction court reviewed the claims Sutherlin raised and denied his petition, holding that he did raise or could have raised most of these claims on direct appeal and therefore may not raise them in a subsequent petition for postconviction relief. The court did not address Sutherlin's claims regarding the wage garnishment, concluding that this issue is not properly raised in a petition for postconviction relief. The court also denied Sutherlin's request for an evidentiary hearing, stating that his claims are "so insubstantial that they do not merit a hearing in view of the overwhelming direct evidence of [Sutherlin's] guilt."

Sutherlin filed a notice of appeal with this court. He reiterates his claim that he has discovered new evidence, he raises the many constitutional violations alleged in his petition, and he also argues that the postconviction court erred by failing to hold an evidentiary hearing. The state asserts that the issues Sutherlin raises are either procedurally barred in a postconviction relief proceeding or are without merit. The state also claims that the district court did not abuse its discretion by dismissing Sutherlin's petition without an evidentiary hearing.

## I.

■ This court reviews a postconviction proceeding only to determine whether there is sufficient evidence to support the postconviction court's findings. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997). We will not disturb the postconviction court's decision absent an abuse of discretion. *Id.*

■ Under the *Knaffla* rule, once a petitioner directly appeals a conviction, all matters raised in that appeal or known at the time of appeal will not be considered by a postconviction court in a subsequent petition for relief. *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976); *see also* Minn.Stat. § 590.04, subd. 3 (1996). The *Knaffla* rule applies if the defendant knew or should have known about the issue at the time of appeal. *Black v. State*, 560 N.W.2d 83, 85 (Minn.1997). However, an exception to the *Knaffla* rule provides that a claim that was known but not raised may be considered if the claim is so novel that there was no legal basis for the claim at the time of appeal. *Russell v. State*, 562 N.W.2d 670, 672 (Minn. 1997). "Even if the legal basis of the claim was reasonably available, this court may allow substantive review in limited situations when fairness so requires and when the petitioner did not 'deliberately and inexcusably' fail to raise the issue on direct appeal." *Id.* (citing *Roby v. State*, 531 N.W.2d 482, 484 (Minn.1995)).

■ A lengthy delay in filing a petition for postconviction relief may in itself provide a sufficient basis for affirming the dismissal of the petition when there has already been a direct appeal. For example, we dismissed the petition for postconviction relief in *Gaulke v. State* because the petitioner did not pursue his claims with due diligence, instead waiting until 25 years after his conviction to file the petition. 296 Minn. 487, 487, 206 N.W.2d 652, 652 (1973). *See also Black*, 560 N.W.2d at 85 (dismissing in part

because of 18–year delay); *Fox v. State,* 474 N.W.2d 821, 826 (Minn.1991) (dismissing in part because of 8–year delay). In this case, Sutherlin filed his petition almost ten years after this court affirmed his conviction on direct appeal. This lengthy delay alone may be sufficient grounds for the dismissal of Sutherlin's petition because he did not act with due diligence in pursuing his claims. *See Black,* 560 N.W.2d at 85. Nevertheless, we choose to consider the issues that Sutherlin raises.

## II.

■ Sutherlin claims that two sets of newly discovered evidence warrant postconviction relief. First, Sutherlin claims that he was convicted based on the perjured testimony of Michael Messenger and Loland Dungey. In a related trial, the state charged Sutherlin's girlfriend, Tia McBroom, as an accomplice, alleging that she had given Sutherlin a gun the night of the shooting. McBroom's trial began on September 12, 1985, about two months after Sutherlin's trial. Messenger and Dungey testified at both McBroom's and Sutherlin's trials.

At Sutherlin's trial, Messenger testified that Sutherlin and Sutherlin's brother both threatened to kill Miller after the initial fight at Sylvia's Bar, but that Sutherlin's brother made most of the threats. In contrast, at McBroom's trial, Messenger testified that both brothers were "talking about doing to him, you know, killing him," but still maintained that the brother was the primary instigator. He testified that Sutherlin "added to it but he didn't really say much about it as [his brother] did." Further, at Sutherlin's trial, Messenger testified that he saw McBroom give Sutherlin a gun, but at McBroom's trial, Messenger testified that he could not see what, if anything, McBroom handed to Miller. At his own trial, Sutherlin testified that he had his own gun all evening.

Dungey, Miller's brother, also testified at both McBroom's and Sutherlin's trials. At Sutherlin's trial, Dungey first testified: "Right as we turned and realized he was standing there, he just started firing. He didn't say anything. He just started firing on us." However, after his recollection was refreshed by an earlier statement to the police, Dungey stated that Sutherlin threatened to kill Miller immediately before firing the gun. At McBroom's trial, Dungey testified that Sutherlin "started firing and that was that." At his own trial, Sutherlin admitted that he made threats to Miller before shooting, stating that he and Miller "exchanged words" such as " 'I'm going to kill you.' "

■ Sutherlin alleges that this newly discovered evidence of Messenger's and Dungey's false testimony bolsters his self-defense claim. If it is discovered that false testimony was given at trial, we apply the rule developed in *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928). *See State v. Caldwell,* 322 N.W.2d 574, 584–85 (Minn.1982) (citing to *Larrison* ). Under the *Larrison* rule, the petitioner must meet three criteria: (1) the court must be "reasonably well satisfied" that the testimony was false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the petitioner was taken by surprise at trial or did not know of the falsity until after trial. *Id.* at 585.

Sutherlin's argument with respect to Messenger's and Dungey's testimony fails all three prongs. First, the testimony at the two trials was not markedly different. Given the many similarities between the testimony at both trials, we are not "reasonably well satisfied" that the testimony at either trial was false. Second, at Sutherlin's trial, there were several eyewitnesses who observed the shooting. Even without Messenger's and Dungey's testimony, it is highly likely that the jury would have reached the same conclusion. Third, Sutherlin's attorney did not appear to be surprised by the testimony and subjected both Messenger and Dungey to vigorous cross-examination as to their credibility. Sutherlin is not entitled to a new trial on the basis of any newly discovered evidence regarding Messenger's and Dungey's testimony.

■ Sutherlin's second claim of newly discovered evidence involves an affidavit from Nathaniel Anderson dated November 18, 1994. In his affidavit, Anderson states that on the night of the shooting he saw Messen-

ger and Miller before they came to Sylvia's Bar. Anderson claims that Messenger's girlfriend had a pistol. He also claims that Miller told him and Messenger that Sutherlin was at Sylvia's Bar and had "messed with one of his girls," and that Miller and Messenger had to go "take care of business." Sutherlin argues that Anderson's affidavit describes Miller's state of mind on the night of the shooting and that this newly discovered evidence warrants a reversal of his conviction or at least a new trial. Anderson claimed in his affidavit he had been questioned concerning the night of the murder and that he was at the courthouse ready to testify at the original trial. The record is unclear as to why Anderson did not testify.

■ Newly discovered evidence will only be used to grant postconviction relief if four elements are met: (1) the evidence was not known to the petitioner or counsel at the time of trial; (2) the evidence could not have been discovered through due diligence before trial; (3) the evidence is not cumulative, impeaching, or doubtful; and (4) the evidence probably would produce an acquittal or a more favorable result. *Rainer*, 566 N.W.2d at 695. Given that many eyewitnesses testified against Sutherlin, Anderson's testimony alone probably would not have produced a more favorable result. Sutherlin fails at least the fourth prong of this test. Because these claims are without merit, Sutherlin is not entitled to postconviction relief on the basis of any newly discovered evidence.

### III.

Sutherlin raises three trial-related issues. He argues that the prosecutor improperly withheld evidence, that the court's refusal to grant a continuance violated his right to due process, and that his trial attorney provided ineffective assistance of counsel.

#### a. Withholding of Evidence

■ Sutherlin argues that the prosecutor improperly withheld evidence of Miller's criminal history and the police reports from the night of the shooting. More particularly, he asserts that his attorney requested that the state provide Sutherlin with a copy of Miller's criminal record and the state im-

properly withheld this information. Apparently Sutherlin wanted to use Miller's criminal history to support trial testimony that Miller had cocaine in his bloodstream when he died and that he had acted aggressively toward Sutherlin and Sutherlin's brother in the past. In response to Sutherlin's request, the state contended that Miller's criminal history was not relevant and that the state would only provide the information under court order. Sutherlin's claim lacks merit. Sutherlin's attorney knew that Miller had a criminal record at the time of trial. The police reports were attached to the complaint against Sutherlin, to which he and his attorney had access. Moreover, nothing in the record shows that Sutherlin's attorney pursued this issue.

■ Sutherlin also claims that the state withheld police reports that show that the police failed to include information about an officer who beat him after his arrest. After the police removed Sutherlin from the trunk of the Cadillac, an officer slapped him repeatedly in the head. A second officer came to Sutherlin's aid and stopped the first officer from beating him. An account of this beating was not included in the arrest reports, but the police reports were attached to the original complaint, and Sutherlin's attorney did have access to them. Moreover, two police officers did testify at trial that Sutherlin was assaulted by a fellow officer after his arrest, and one of the officers admitted that this incident was not included in his report. This issue lacks merit, and Sutherlin could have raised this issue on direct appeal.

#### b. Refusal to Grant a Continuance

■ Sutherlin claims that the court's refusal to grant a continuance so that he could obtain a private attorney deprived him of a fair trial. At his pretrial hearing, Sutherlin requested a continuance so that he could obtain a private attorney. Sutherlin's court-appointed attorney urged the court to take Sutherlin's wishes into consideration, citing the short time between Sutherlin's arrest and the date set for trial. The court denied the motion, but agreed to reconsider it if a private attorney contacted the court that day

and indicated that he or she would be ready to proceed. When the court reconvened that afternoon, a private attorney appeared with Sutherlin. The court said that the court-appointed attorney should handle Sutherlin's pretrial motions, but that it would continue the trial until the following Monday if the private attorney would be ready to begin trial at that time. At that point, the private attorney indicated that he had consulted with Sutherlin and was declining to represent him. The court then stated that its earlier ruling denying the motion for a continuance remained in effect and that the court-appointed attorney would continue to represent Sutherlin. Sutherlin clearly knew about this issue at the time of his direct appeal and therefore we will not consider it in this subsequent petition.

### c. Ineffective Assistance of Trial Counsel

■ Sutherlin's claim that his trial attorney provided ineffective assistance of counsel is also procedurally barred because he knew of this issue at the time of his direct appeal. Sutherlin claims that his attorney failed to object to certain constitutional issues that this court later declined to rule on precisely because the attorney had not objected. Even if this claim were not procedurally barred, there is a "strong presumption that a counsel's performance falls within the wide range of reasonable professional assistance." *Hale v. State,* 566 N.W.2d 923, 927 (Minn.1997). To prevail on an ineffective assistance of counsel claim, the petitioner must prove that the attorney's representation fell below an objective standard of reasonableness, and that, but for the attorney's errors, the result would have been different. *Roby v. State,* 547 N.W.2d 354, 356 (Minn. 1996).

Although Sutherlin claims that his trial attorney failed to properly pursue discovery or investigate the case, the record reflects that the attorney spent many hours preparing for the trial. During the trial, Sutherlin's attorney made evidentiary objections, vigorously cross-examined the prosecution's witnesses, and called his own witnesses to present Sutherlin's self-defense claim. Sutherlin's trial attorney's representation did not

fall below an objective standard of reasonableness. Further, given the many eyewitnesses present the evening of the shooting, it is unlikely that the result of the trial would have been different had his attorney objected as Sutherlin believes was appropriate. The trial attorney's representation did not violate Sutherlin's Sixth Amendment right to effective assistance of counsel. Moreover, Sutherlin's ineffective assistance of trial counsel claim is merely a recasting of Sutherlin's evidentiary objections that he already made on his direct appeal. *See Black,* 560 N.W.2d at 86 (dismissing in part because petition only recast an evidentiary objection already made on direct appeal). In addition to being procedurally barred, Sutherlin's claim of ineffective assistance of trial counsel lacks merit.

### IV.

■ Sutherlin also argues that his appellate attorney provided ineffective assistance of counsel, thus violating his Sixth Amendment rights. His main contention is that his appellate attorney failed to raise the claim that his trial attorney provided ineffective assistance of counsel. By making this argument, Sutherlin is in effect simply recharacterizing an issue that he should have raised on direct appeal. *See id.* As there is no merit to Sutherlin's claim that his trial attorney provided ineffective assistance, his appellate attorney did not provide ineffective assistance of counsel by deciding not to pursue this issue. Further, we have said that "[w]hen an appellant and his counsel have divergent opinions as to what issues should be raised on appeal, his counsel has no duty to include claims which would detract from other more meritorious issues." *Case v. State,* 364 N.W.2d 797, 800 (Minn.1985).

### V.

■ Sutherlin argues that the garnishment of his wages to pay for the costs of his incarceration violates his right to be free from slavery under the Thirteenth Amendment and his right to be free from double jeopardy. Minnesota law requires that all prison inmates work. Minn.Stat. § 243.18, subd. 2 (1996). If they are able to work but

do not do so, they fail to earn good time credit or are placed in disciplinary confinement. *Id.* The commissioner of corrections may promulgate rules requiring inmates to pay all or part of the cost of room, board, clothing, medical services, and dental services. Minn.Stat. § 243.23, subd. 2 (1996). These costs are payable from earnings, including those earned from private industry. *Id.* Currently, Sutherlin works for MinnCor Industries, Inc., a private industry that hires prison inmates to manufacture its goods. He makes five dollars an hour, and from his wages 42% is garnished to pay for the expenses of his confinement, and another 10% is taken for a victim-aid fund.

Postconviction remedies generally are available for claims relating to the petitioner's sentence or conviction, Minn.Stat. § 590.01, subd. 1 (1996), but they are not available for claims relating to conditions of confinement. Just last term we said that,

> constitutional claims against the Department of Corrections' deduction of room and board costs from inmate wages to offset the cost of incarceration are not properly brought as a basis for postconviction relief.

*Rainer,* 566 N.W.2d at 696. Because the garnishment of Sutherlin's wages is an issue completely separate from his conviction or sentence, this issue is improperly brought as a basis for postconviction relief. *Id.* Accordingly, we decline to rule on this issue.

### VI.

■■■■■ Sutherlin's final argument is that the lower court improperly denied his request for an evidentiary hearing. An evidentiary hearing is not required unless "the petitioner alleges such facts which, if proved by a fair preponderance of the evidence, would entitle him or her to the requested relief." *Rainer,* 566 N.W.2d at 695. For this purpose, we assume that the facts can be proved. Even if proved, the facts Sutherlin alleges would not entitle him to a new trial or a reversal of his conviction. The testimony of other eyewitnesses provides overwhelming support for the jury's verdict.

■■■ Additionally, the "allegations raised in the petition must be more than argumen-

tative assertions without factual support." *Id.* Sutherlin offers little factual support for his assertions. Because Sutherlin makes only "argumentative assertions without factual support," and because the facts he alleges would not entitle him to the requested relief, no evidentiary hearing on his postconviction petition is required.

Affirmed.