STATE OF MINNESOTA

IN SUPREME COURT

A22-1063

Court of Appeals                                                    Procaccini, J.

Thomas Robert Tichich,

          Appellant,

vs.                                                              Filed:  March 20, 2024
                                                           Office of Appellate Courts
State of Minnesota,

          Respondent.

_____

Stacy L. Bettison, Bettison Law, Minneapolis, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Anna R. Light, Adam E. Petras, Assistant County Attorneys, Minneapolis, Minnesota, for respondent.

James R. Mayer, Minneapolis, Minnesota, for amicus curiae Great North Innocence Project.

Alicia L. Granse, Shauna Faye Kieffer, Minneapolis, Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

William Ward, State Public Defender, Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota, for amicus curiae Minnesota Board of Public Defense.

_____

1

1.      A new expert opinion that merely differs from a trial expert's opinion does not establish that the trial expert's opinion was false, and such a new expert opinion is properly analyzed as newly discovered evidence under the test set forth in *Rainer v. State*, 566 N.W.2d 692 (Minn. 1997).

2.      Guilty verdicts for third-degree criminal sexual conduct, Minn. Stat. § 609.344 (2020), and attempted third-degree criminal sexual conduct, Minn. Stat. § 609.17 (2022) (attempt); *see* Minn. Stat. § 609.344 (underlying crime attempted), are legally consistent.

Affirmed.

## O P I N I O N

PROCACCINI, Justice.

Appellant Thomas Robert Tichich argues that the district court abused its discretion when it summarily denied his petition for postconviction relief. In 2018, a jury found Tichich guilty of both third-degree criminal sexual conduct against a physically helpless person, Minn. Stat. § 609.344, subd. 1(d) (2020),[1] and attempted third-degree criminal sexual conduct, Minn. Stat. § 609.17 (2022) (attempt); *see* Minn. Stat. § 609.344, subd. 1(d) (underlying crime attempted). The district court convicted Tichich of

---

[1]      Minnesota Statutes section 609.344 was amended in 2021. *See* Act of June 30, 2021, ch. 11, art. 4, § 18, 2021 Minn. Laws 1st Spec. Sess. 1947, 2044–46. The provision making it a crime to engage in sexual penetration with a physically helpless person is now found in Minnesota Statutes section 609.344, subdivision 1(b) (2022). The statute's substance did not change.

third-degree criminal sexual conduct and sentenced him to 48 months in prison and a 10-year period of conditional release following confinement.

In his petition for postconviction relief, Tichich alleged that two of the State's expert witnesses falsely testified and that the jury's guilty verdicts were legally inconsistent. Tichich submitted a new expert opinion and other evidence to support his claim that the State's witnesses falsely testified. The district court summarily denied Tichich's petition, concluding that the guilty verdicts were legally consistent and that Tichich's false-testimony claim failed to satisfy the test set forth in *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir. 1928).[2] The court of appeals affirmed.

Even if we assume that Tichich's proffered evidence is true, that evidence fails to show that the State's experts falsely testified, and his claim is therefore properly analyzed under the test for newly discovered evidence set forth in *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997). Because Tichich's claim does not satisfy the *Rainer* test, and the jury's verdicts are legally consistent, we affirm the decision of the court of appeals.

**FACTS**

The following facts were established at trial. In the early morning hours of December 15, 2016, following a night of drinking at two bars, Tichich, Y.R., and A.D. went to Y.R.'s nearby home in Northeast Minneapolis. Shortly after arriving, A.D. laid

---

[2]     Our court has adopted the *Larrison* test to determine whether to grant a new trial based on newly discovered evidence of false testimony. *See Sutherlin v. State*, 574 N.W.2d 428, 433 (Minn. 1998). Although *Larrison* was overruled by a subsequent federal decision, we continue to apply the *Larrison* test. *Opsahl v. State*, 677 N.W.2d 414, 422 (Minn. 2004); *see Larrison*, 24 F.2d at 87–88, *overruled by United States v. Mitrione*, 357 F.3d 712, 718 (7th Cir. 2004).

down on one of two couches in the living room and fell asleep. A.D. testified that, because of her state of intoxication, she did not recall going to Y.R.'s house and she only vaguely remembered lying down on the couch. Y.R. directed Tichich to sleep on the other couch in the living room, and then she went upstairs to her bedroom to sleep. Sometime after Y.R. fell asleep, she awoke to Tichich in her bed making sexual advances toward her. Y.R. rejected Tichich's advances, ordered him to leave her room, and relocated to another bedroom across the hall. Y.R. ultimately decided that she no longer wanted Tichich in her home and exited the bedroom to tell him to leave. Y.R. noticed that her bedroom door was closed and, assuming that Tichich fell asleep in her bedroom, she decided to go downstairs to let her dog outside.

As Y.R. came down the stairs, she observed Tichich from behind. Tichich was naked and thrusting his penis toward A.D.'s head as she lay, still unconscious, on the couch. Y.R. could not see A.D.'s head because Tichich was blocking it with his body. Y.R. immediately took two photos of the scene with her cellphone, while yelling at Tichich to leave and threatening to call the police. The photos, introduced as evidence at trial, show Tichich standing naked with his genital area directly in front of A.D.'s head with his knee on the couch where A.D.'s head is resting. Tichich gathered his belongings and left Y.R.'s home. Y.R. then unsuccessfully attempted to wake A.D. and then called the police.

When the police officers arrived at Y.R.'s home, A.D. was still unconscious on the couch and unresponsive to the officers' attempts to wake her. When A.D. did wake, she was disoriented, confused, and had no recollection of any sexual contact with Tichich. She denied kissing Tichich at any time that evening and denied any consensual sexual contact.

4

A.D. later underwent a sexual assault examination, conducted by a sexual assault nurse examiner ("the nurse"). The nurse swabbed the inside of A.D.'s mouth and her perioral area—the area directly outside of the lips—but the nurse did not directly swab A.D.'s lips. The Minnesota Bureau of Criminal Apprehension (BCA) performed a DNA analysis on the swabs and obtained a Y-chromosomal profile from the swabs of A.D.'s perioral area that matched Tichich's profile. The BCA did not obtain any Y-chromosomal profiles from the swabs of the inside of A.D.'s mouth.

The State of Minnesota charged Tichich with third-degree criminal sexual conduct against a physically helpless person, Minn. Stat. § 609.344, subd. 1(d) (2020), and attempted third-degree criminal sexual conduct, Minn. Stat. § 609.17 (2022); *see* Minn. Stat. § 609.344, subd. 1(d), for his actions against A.D.[3]

At trial, the State called the nurse to testify. To explain why she did not swab A.D.'s lips directly, the nurse testified that "[o]ur training is that we do not swab the lips because it would not yield good evidence. There is so much of the patient's own saliva and sloughing of cells it doesn't yield quality evidence." She further testified that she "went to a conference where there was a speaker talking about issues in evidence collection and discussed that." The State also called a BCA forensic scientist to testify about DNA transfer. Relevant here, the forensic scientist testified that "touch DNA"—meaning DNA

---

[3] The State also charged Tichich with fourth-degree criminal sexual conduct, Minn. Stat. § 609.345, subd. 1(d) (2020), and attempted fourth-degree criminal sexual conduct, Minn. Stat. § 609.17 (attempt); *see* Minn. Stat. § 609.345, subd. 1(d) (underlying crime attempted). The district court dismissed those charges, leaving the counts of attempted and completed third-degree criminal sexual conduct for trial.

collected from an item someone has touched or handled—is usually DNA from the skin cells of a person's hand. The forensic scientist also testified that she would not expect to find the DNA of a person who handled another person's cellphone for 30 seconds.

The jury found Tichich guilty of both third-degree criminal sexual conduct and attempted third-degree criminal sexual conduct. The district court only convicted Tichich of third-degree criminal sexual conduct. The district court neither entered a conviction nor imposed a sentence for the attempted third-degree criminal sexual conduct count. Tichich appealed, the court of appeals affirmed his conviction and sentence, and we denied review. *State v. Tichich*, No. A18-1411, 2019 WL 4409394 (Minn. App. Sept. 16, 2019), *rev. denied* (Minn. Dec. 31, 2019).

Following his direct appeal, Tichich filed a petition for postconviction relief. In his petition, Tichich alleged that he received ineffective assistance of counsel because his trial and appellate counsel failed to challenge his guilty verdicts as legally inconsistent. He also alleged that the nurse and the forensic scientist falsely testified at trial. To support his false-testimony claim, Tichich submitted the following evidence: (1) an affidavit from a newly retained expert; (2) copies of three Minnesota court decisions; and (3) the BCA's response to a data request.

In the affidavit, Tichich's new expert opined that both the nurse and the forensic scientist falsely testified at trial. Regarding the nurse's testimony, Tichich's expert disagreed with the nurse's assertion that lip swabs do not produce useful DNA evidence. Tichich's expert referred to several studies suggesting that useful DNA evidence is sometimes found from lip swabs. As to the forensic scientist's testimony, Tichich's expert

6

criticized the forensic scientist's use of the term "touch DNA" and her testimony that the amount of DNA transferred from an individual to an object is affected by the length of time of the contact. Tichich's expert cited a study that found a substantial transfer of DNA occurs at initial contact and that the nature of the contact, either passive contact or friction contact, will impact the level of transfer. Tichich's expert also opined that the forensic scientist's testimony was "completely irrelevant to this case."

In addition to the affidavit of his newly retained expert, Tichich submitted a copy of three Minnesota court decisions—one that raised a false-testimony claim against the same forensic scientist who testified at Tichich's trial, challenging her testimony about DNA transfer, and two that referenced lip swabs. Tichich further submitted the BCA's response to a data request, reporting that the BCA received 90 cases from 2015–2017 that included DNA evidence from samples collected from the lips or mouth area.

The district court summarily denied Tichich's petition, determining that he could have raised his claims on direct appeal and that they were therefore procedurally barred by *State v. Knaffla*, 243 N.W.2d 737 (1976). The court alternatively denied relief on Tichich's false-testimony claim, determining that the test set forth in *Larrison* was not met. The court also rejected Tichich's claims of ineffective assistance of counsel after concluding that the jury's guilty verdicts were legally consistent.

Tichich appealed the denial of his petition for postconviction relief. In a precedential opinion, the court of appeals affirmed the postconviction court's decision. *Tichich v. State*, 989 N.W.2d 692, 701–02, 704 (Minn. App. 2023). We granted Tichich's petition for review.

7

**ANALYSIS**

Tichich argues that the district court abused its discretion when it denied his request for an evidentiary hearing based on his claims of newly discovered evidence of false testimony and ineffective assistance of counsel. "We review the denial of a petition for postconviction relief, including the petitioner's request for an evidentiary hearing, for an abuse of discretion." *Campbell v. State*, 916 N.W.2d 502, 506 (Minn. 2018). In doing so, we review the district court's "legal conclusions de novo and its findings of fact for clear error." *Rhodes v. State*, 875 N.W.2d 779, 786 (Minn. 2016).

I.

We first address Tichich's claim that the district court abused its discretion when it denied his request for an evidentiary hearing based on a claim of newly discovered evidence of false testimony. A postconviction petitioner is entitled to an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2022). But a district court "need not hold an evidentiary hearing when the petitioner alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012). Because we must determine whether Tichich was entitled to an evidentiary hearing, we must also identify the legal standard governing the claim alleged in the petition. *See id.* at 516–17 (identifying the legal standard governing the petitioner's postconviction claim of ineffective assistance of appellate counsel and concluding that the alleged facts were legally insufficient to satisfy that standard). For the reasons that follow, we conclude that Tichich's claim is one of newly discovered evidence,

8

not one of newly discovered evidence *of false testimony*, and therefore the standard set forth in *Rainer* governs. Because Tichich has not alleged facts that, if proven by a fair preponderance of the evidence, would satisfy the *Rainer* test, the district court did not abuse its discretion when it summarily denied Tichich's claim.

A.

Tichich argues that the newly discovered evidence he submitted in support of his postconviction petition proves that the nurse and the forensic scientist falsely testified at trial and thus the *Larrison* test for newly discovered evidence of false testimony applies to his claim. *See McDonough v. State*, 827 N.W.2d 423, 425 n.1 (Minn. 2013) (citing *Larrison*, 24 F.2d at 87–88). The State disagrees, arguing that the *Rainer* test for newly discovered evidence should apply because the new evidence Tichich submitted does not render the challenged trial testimony "false." *See Rainer*, 566 N.W.2d at 695. We agree with the State.

We apply the *Larrison* test to claims of newly discovered evidence of false testimony. *See McDonough*, 827 N.W.2d at 425 n.1. We have consistently considered witness recantation to be newly discovered evidence of false testimony and have therefore applied the *Larrison* test in such cases. *See, e.g.*, *Opsahl v. State*, 677 N.W.2d 414, 422–23 (Minn. 2004) (several witnesses recanted their trial testimony); *Ferguson v. State*, 779 N.W.2d 555, 559 (Minn. 2010) (witness recanted his trial testimony); *Kaiser v. State*, ___ N.W.3d ___, No. A22-0749, 2024 WL 1080968, at *5 (Minn. Mar. 13, 2024) (expert witness "in effect recanted his trial testimony"). But we have not addressed whether the

9

*Larrison* test applies to unrecanted expert testimony that is challenged by new expert testimony not presented at trial.

Tichich relies on *State v. Caldwell*, 322 N.W.2d 574 (Minn. 1982), to support his contention that *all* allegations of false testimony, including claims of erroneous scientific evidence based on new expert testimony, are appropriately considered under *Larrison*. In *Caldwell*, a fingerprint expert testified at trial that a fingerprint found on a significant piece of evidence "was identical to the known print of [Caldwell's] right thumb." 322 N.W.2d at 580. After Caldwell's trial, in connection with the prosecution of his alleged accomplice, three new experts concluded that it was not Caldwell's fingerprint. *Id.* at 582. The prosecutor of the alleged accomplice told the court that "he would ask the jury to disregard the latent print as a misidentified fingerprint." *Id.* We concluded that the fingerprint expert's testimony in Caldwell's trial "was damning—and it was false" and therefore applied the *Larrison* test. *Id.* at 586–87.

This case and *Caldwell* both involve a "battle of the experts" to some degree, but *Caldwell* is distinguishable. In *Caldwell*, three new experts determined that the challenged expert's conclusion (that the fingerprints matched) was false, and the State effectively conceded that the challenged expert misidentified the fingerprint. The State made no such concession here, and Tichich submitted the opinion of only one expert who merely disagreed with and impeached parts of the testimony of the challenged trial experts. For example, Tichich's new expert did not dispute that the nurse attended a training on the efficacy of lip swab evidence or that the training advised the nurse that lip swab evidence is not useful. Instead, Tichich's expert criticized the content of the nurse's training.

Similarly, Tichich's expert criticized the terminology that the forensic scientist used to discuss DNA transfer, but ultimately concluded that the forensic scientist's testimony was irrelevant to the case. These allegations might impeach the testimony and credibility of the nurse and the forensic scientist, but they do not render those witnesses' testimony false. *See Pippitt v. State*, 737 N.W.2d 221, 227–28 (Minn. 2007).[4]

In sum, although *Larrison* continues to be the appropriate test for false testimony, including cases of witness recantation or admission by the State that a witness falsely testified, it is not applicable here because the appellant presents a new expert opinion that merely offers a different view from the expert opinions presented at trial. Without more, a new and differing expert opinion does not establish that trial testimony was false. Claims based on such an opinion are appropriately characterized as claims of newly discovered evidence and are properly analyzed under the *Rainer* test.

### B.

To be entitled to an evidentiary hearing on a claim of newly discovered evidence, a "petitioner must allege facts that, if proven by a fair preponderance of the evidence, would satisfy all four prongs from *Rainer*." *Fort v. State*, 829 N.W.2d 78, 82 (Minn. 2013). Under *Rainer*, a petitioner is entitled to a new trial based on newly discovered evidence

---

[4]    In *Pippitt*, we applied the *Race* test, which is another name for the *Rainer* test, to a postconviction affidavit that impeached a witness's trial testimony but did not prove the testimony false. *Pippitt*, 737 N.W.2d at 227–28. *Compare Race v. State*, 417 N.W.2d 264, 266 (Minn. 1987), *with Rainer*, 566 N.W.2d at 695. We observed that the *Larrison* test is inappropriate where, as is the case here, there was no witness recantation, and the new affidavit "simply provides some evidence that, if admissible, could be used to impeach" another witness's trial testimony. *Pippitt*, 737 N.W.2d at 227–28.

if (1) "the evidence was not known to the defendant or his/her counsel at the time of the trial"; (2) "the evidence could not have been discovered through due diligence before trial"; (3) "the evidence is not cumulative, impeaching, or doubtful"; and (4) "the evidence would probably produce an acquittal or a more favorable result." *Rainer*, 566 N.W.2d at 695. To be entitled to relief, a petitioner must establish all four prongs. *Andersen v. State*, 940 N.W.2d 172, 178 (Minn. 2020).

Tichich's claim fails on the third and fourth prongs of the *Rainer* test.[5] Tichich's claim fails the third prong because the newly discovered evidence serves only to impeach the nurse's testimony regarding her training about the efficacy of lip swab evidence and the forensic scientist's testimony regarding DNA transfer. *See Pippitt*, 737 N.W.2d at 227–28. Tichich's claim also fails the fourth prong. Although Tichich's new expert opinion may contradict the testimony of the nurse and the forensic scientist, and arguably impeaches their credibility, the DNA evidence itself is not contradicted. And the photographic evidence and eyewitness testimony presented at trial remain unaffected. Based on the strength of the State's evidence, the newly discovered evidence would not "probably produce an acquittal or a more favorable result." *Rainer*, 566 N.W.2d at 695.

Accordingly, even if we assume that Tichich's newly discovered evidence would be proved by a fair preponderance of the evidence, it would be insufficient to satisfy the

---

[5]    Because the third and fourth prongs of the *Rainer* test are dispositive here, we need not address whether the evidence satisfies the first or second prongs.

*Rainer* test. We therefore conclude that the district court did not abuse its discretion in denying Tichich an evidentiary hearing.[6]

## II.

Tichich also argues that his counsel was ineffective for failing to raise the issue of legally inconsistent verdicts.[7] The State disagrees, arguing that guilty verdicts for completed and attempted third-degree criminal sexual conduct are legally consistent and therefore Tichich's counsel was not ineffective. We agree with the State.

## A.

To be entitled to an evidentiary hearing based on a claim of ineffective assistance of counsel, "an appellant must allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)." *Chavez-Nelson v. State*, 948 N.W.2d 665, 671 (Minn. 2020) (citation omitted) (internal quotation marks omitted). Under the *Strickland* test, Tichich must show that (1) his "counsel's representation fell below an objective standard of reasonableness" and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors,

---

[6]   The State argues, and the district court concluded, that Tichich's newly discovered evidence claim is procedurally barred under *Knaffla*. Because we conclude that Tichich's claim fails on the merits, we need not decide this issue.

[7]   Tichich was represented by the same counsel at trial and on direct appeal, and he argues that his counsel was ineffective at both stages. The State concedes that Tichich's claim of ineffective assistance of *appellate* counsel is not barred by *Knaffla* because it could not have been known or raised at the time of his direct appeal. *See Onyelobi v. State*, 932 N.W.2d 272, 280 (Minn. 2019). But the State argues, and the district court concluded, that Tichich's claim related to his *trial* counsel is *Knaffla*-barred. We need not decide this issue because we conclude that Tichich's claims of ineffective assistance of counsel against both trial and appellate counsel fail on the merits.

the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694; *see Woodard v. State*, 994 N.W.2d 272, 277 (Minn. 2023). "We may analyze the *Strickland* requirements in either order and may dispose of a claim on one prong without considering the other." *Lussier v. State*, 853 N.W.2d 149, 154 (Minn. 2014).

To determine whether Tichich's counsel's representation fell below an objective standard of reasonableness, we look to the merits of the underlying claim and must decide whether jury verdicts for third-degree criminal sexual conduct and attempted third-degree criminal sexual conduct are legally inconsistent.

B.

"Verdicts are legally inconsistent when proof of the elements of one offense negates a necessary element of another offense." *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). Convicting a defendant after a jury renders legally inconsistent verdicts is an error because such an inconsistency suggests that the jury's underlying factual findings are invalid. *Steward v. State*, 950 N.W.2d 750, 755 (Minn. 2020); *State v. Moore*, 481 N.W.2d 355, 359 (Minn. 1992). For example, in *State v. Moore*, 458 N.W.2d 90, 94 (Minn. 1990), we held that guilty verdicts for both first-degree premeditated murder and second-degree manslaughter were legally inconsistent because the first offense required the jury to find that the death was caused with premeditation and intent, while the second offense required the jury to find that the death was caused through negligent or reckless conduct. Because it is impossible to cause another's death with premeditation and intent and, at the same time, through negligent or reckless conduct, we concluded that proof of an element of

14

first-degree premeditated murder negates a necessary element of second-degree manslaughter. *Moore*, 458 N.W.2d at 94.

Here, to find Tichich guilty of third-degree criminal sexual conduct, the jury needed to find that Tichich (1) intentionally engaged in sexual penetration with A.D. and (2) knew or had reason to know that A.D. was physically helpless. Minn. Stat. § 609.344, subd. 1(d) (2020); *see State v. Wenthe*, 865 N.W.2d 293, 302 (Minn. 2015) ("Generally, criminal sexual conduct offenses require only an intent to sexually penetrate, unless additional mens rea requirements are expressly provided."). To find Tichich guilty of *attempted* third-degree criminal sexual conduct, the jury needed to find that Tichich (1) intended to commit third-degree criminal sexual conduct and (2) did an act which was a substantial step toward, and more than preparation for, the commission of the crime. Minn. Stat. § 609.17 (2022); *see* Minn. Stat. § 609.344, subd. 1(d).[8]

We discern no legal inconsistency between the elements of these offenses. No necessary element of attempted third-degree criminal sexual conduct negates a necessary element of third-degree criminal sexual conduct.[9] As a result, it was legally consistent for

---

[8]    The district court properly instructed the jury on the elements of these offenses.

[9]    In a joint amicus brief, the Minnesota Board of Public Defense and Minnesota Association of Criminal Defense Lawyers argue that the two offenses require different and inconsistent mental states because attempt is a specific-intent crime, while third-degree criminal sexual conduct is a general-intent crime. *See State v. Fleck*, 810 N.W.2d 303, 308–09 (Minn. 2012) (discussing the distinction between a specific-intent and general-intent crime). But the "general intent" required for third-degree criminal sexual conduct is intent to sexually penetrate, and the "specific intent" required for attempted third-degree criminal sexual conduct is the intent to commit that crime. Finding intent to sexually penetrate a victim is not legally inconsistent with also finding intent to commit

the jury to find that Tichich both took a substantial step toward completing third-degree criminal sexual conduct and then completed that crime. We address Tichich's arguments to the contrary in turn.

Tichich argues that guilty verdicts for both offenses are legally inconsistent because they are mutually exclusive, as he could have either completed the crime or attempted to do so, but not both. Tichich's argument is founded on an assertion that the jury must find that the crime was uncompleted to return a guilty verdict for attempt. Tichich relies on our decision in *State v. Noggle*, 881 N.W.2d 545 (Minn. 2016), arguing that in *Noggle* we held that the "substantial step" element of attempt requires a substantial step *toward an uncompleted crime*. Although we clarified in *Noggle* that a conviction for attempt is not a violation of the statute defining the underlying completed crime, we did not address the necessary elements of attempt, and we did not add noncompletion as a necessary element of attempt. *Id.* at 549.

Tichich alternatively argues that the attempt statute, Minn. Stat. § 609.17, is ambiguous and that statutory interpretation of the attempt statute requires the conclusion that the verdicts are legally inconsistent. "A statute is ambiguous only when the statutory language is subject to more than one reasonable interpretation." *State v. Fleck*, 810 N.W.2d 303, 307 (Minn. 2012). Because Tichich does not point to any specific language in the attempt statute that is subject to more than one reasonable interpretation, we reject this argument.

---

third-degree criminal sexual conduct. *See Cole*, 542 N.W.2d at 51–52 ("Intent to commit assault and intent to point a gun are not inconsistent mental states.").

16

We emphasize that guilty *verdicts* are not the same as criminal *convictions*. Minnesota law protects defendants against duplicative convictions and sentences for the same conduct. It remains true that a defendant may be *convicted* of either a completed crime or attempt, but not both, for the same conduct committed against the same victim. Minn. Stat. § 609.04, subd. 1 (2022); *see State v. Johnson*, 616 N.W.2d 720, 730 (Minn. 2000). And "if a defendant commits multiple offenses against the same victim during a single behavioral incident," the district court may impose a sentence for only one of those offenses. *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn. 1995); *see* Minn. Stat. § 609.035, subd. 1 (2022). Here, although the jury returned guilty verdicts for both completed and attempted third-degree criminal sexual conduct, Tichich was not convicted of, or punished for, the attempted third-degree criminal sexual conduct offense.

Because Tichich's guilty verdicts are legally consistent, his counsel was not ineffective for failing to argue otherwise. Accordingly, the district court did not abuse its discretion by summarily denying relief.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

17