**STATE of Minnesota, Respondent,**

v.

**Andre Francis HALL, Appellant.**

No. A05–1534.

Supreme Court of Minnesota.

Oct. 12, 2006.

---

1. *See, e.g., State v. Eling,* 355 N.W.2d 286, 294–95 (Minn.1984).

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

MEYER, Justice.

Appellant Andre Francis Hall appeals his conviction for the October 5, 2004, shooting death of Dennis Winfield.[1] A Hennepin County jury found Hall guilty of first-degree murder in violation of Minn. Stat. § 609.185(a)(1) (2004), second-degree murder in violation of Minn.Stat. § 609.19, subd. 1(1) (2004), and being a prohibited person in possession of a firearm in violation of Minn.Stat. § 624.713, subds. 1(b), 2(b) (2004). The trial court entered judgment of conviction on first-degree murder and sentenced Hall to the mandatory term of life in prison. Hall raises four claims on appeal: (1) the trial court erred when it gave a jury instruction on transferred intent; (2) the transferred intent instruction constituted an improper constructive amendment of the indictment; (3) the trial court abused its discretion when it denied two motions relating to juror bias; and (4) he was denied the right to a public trial when the trial court imposed a blanket exclusion of children from the courtroom.[2]

The facts giving rise to this appeal are as follows. C.S. and her younger sister, P.S., were temporarily residing with their "god sister," A.M., at A.M.'s apartment in Brooklyn Center. On the evening of October 4, 2004, C.S. rode a bus from downtown Minneapolis to Brooklyn Center. Hall, who was A.M.'s ex-boyfriend, was also on the bus. While on the bus, C.S. saw Hall drinking alcohol and overheard Hall trying to sell a gun to a group of men. C.S. and Hall exited the bus at the same

---

1. Although he was 17 years old at the time of the offense, Hall was certified to stand trial as an adult.

2. Because we have concluded that the trial court's erroneous jury instruction did not amount to harmless error and have remanded this case for a new trial, we do not reach Hall's remaining three arguments.

bus stop and both walked to A.M.'s apartment. When Hall and C.S. arrived, A.M., P.S., and three men were present in the apartment. A.M. noticed that Hall had a gun and asked Hall to put it out of sight because she was "terrified of guns." Hall put the gun on top of an entertainment center. Shortly thereafter, A.M. and Hall walked to a Citgo gas station, approximately one and one-half blocks from the apartment. Hall did not bring the gun to the Citgo station.

Winfield was the clerk on duty at the Citgo station. He was working in the cashier's booth, which was protected by bulletproof glass. M.G., a regular patron at the station, was also present. While Hall and A.M. were collecting items to purchase, Hall turned to M.G. and allegedly said either, "F* * *ot, quit looking at my girlfriend," or "Why are you looking at my girl?" At that point, an argument ensued between Winfield and Hall. A.M. asked Hall to leave, but Hall refused, so A.M. returned to her apartment alone.

M.G. testified that after A.M. left, Hall said to Winfield, "This bulletproof glass isn't [going] to save you." Hall also asked Winfield to go outside so they could fight. At some point during the argument, Winfield left the cashier's booth, locked the door to the gas station, and demanded that Hall return the merchandise he was holding before allowing Hall to leave. Hall returned the merchandise, and Winfield unlocked the door and allowed Hall to leave.

After leaving, Hall got into a fight with a number of unidentified men just outside the station. Winfield walked outside and told the men that if they did not break up the fight he would call the police, at which point the men stopped fighting and left the area.

Hall returned to A.M.'s apartment with a bloody face and told A.M. and C.S. that he "got jumped" by three men, and he said words to the effect that he was "going to kill them." Hall also threw two telephones against the wall and eventually left the apartment, taking the gun with him.

Because she did not know where Hall was going, A.M. asked C.S. to go looking for him. C.S. ran to the Citgo station, but Hall was not there. She told Winfield that he should be careful because Hall had left the apartment and had a gun. Winfield called 911 to report the incident. That call was received at 2:46 a.m.

Later, M.G. helped Winfield take some garbage outside to the Citgo station's dumpster. M.G. testified that, while doing so, he saw Hall walk across the street to the area near the dumpster where he and Winfield were, at which point Hall pulled out a gun and shot Winfield at least four times from point blank range. According to M.G., when Hall finished shooting, Hall turned and ran from the scene, and M.G. went into the station and called 911. M.G.'s 911 call was received at 3:14 a.m. Winfield died of multiple gunshot wounds.

After the shooting, Hall returned to A.M.'s apartment, where he told P.S. and C.S., "I got that ni* * *r," or "I capped that ni* * *r," or "I killed that ni* * *r." Hall asked C.S. to "get rid of" the gun, but she was unable to do so before the police arrived and arrested Hall. Hall was able, however, to have the gun wiped off and then hidden before he was arrested. He was also able to change his clothes. During a search of the apartment after Hall's arrest, the police found a .40 caliber gun, which forensic experts subsequently determined was the gun used to kill Winfield.

At trial, the state's primary theory of the case was that Hall premeditated Winfield's murder because Hall was angry about the altercation with Winfield. As an alternative argument, the state advanced a

transferred intent theory, arguing that if Hall left the apartment with the intent to kill the unidentified men, then he could be found guilty of the premeditated murder of Winfield. At the end of the trial, the judge instructed the jury that the premeditation element could be found if Hall had the intent to cause the death of another. During trial, Hall conceded that he was guilty of the firearm possession and second-degree murder charges, but maintained that Winfield's murder was not premeditated.

We are asked to determine whether the trial court erred when it instructed the jury on transferred intent. At trial, Hall elicited testimony from A.M. that when Hall returned to A.M.'s apartment from the Citgo station the first time, he was angry about the fight he had been in with the unidentified men. On cross-examination, the state elicited similar testimony that when Hall returned to A.M.'s apartment he was upset about the fight with the unidentified men, but was not angry about his verbal altercation with Winfield. Hall elicited this testimony to show that he did not premeditate Winfield's murder. In response to this testimony, the state requested that the jury be given a transferred intent instruction. The trial court gave the following instruction on the elements of first-degree murder:

> The elements of murder in the first degree are, first, the death of Dennis Lamont Winfield, Jr. must be proven. Second, the Defendant caused the death of Dennis Lamont Winfield, Jr. Third, the Defendant acted with premeditation and with the intent to kill Dennis Lamont Winfield, Jr. or another person.
>
> Premeditation means that the Defendant considered, planned, prepared for, or determined to commit the act before the Defendant committed it. Premeditation, being a process of the mind, is wholly subjective and, hence, not susceptible to proof by direct evidence. It may be inferred from all the circumstances surrounding the event. It is not necessary that premeditation exist for any specific length of time. A premeditated decision to kill may be reached in a short period of time. However, a[n] unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated.
>
> In order to have had an intent to kill, the Defendant must have acted with the purpose of causing death, or the Defendant must have believed that the act would have that result.
>
> *If the Defendant acted with premeditation and with the intent to cause the death of another, the element of premeditation and intent to kill is satisfied, even though the Defendant did not intend to kill Dennis Lamont Winfield, Jr.*
>
> Fourth, the Defendant's act took place on or about October 5, 2004 in Hennepin County.

(Emphasis added.) Hall objected to the inclusion of that part of the instruction dealing with transferred intent, which reads, "If the Defendant acted with premeditation and with the intent to cause the death of another, the element of premeditation and intent to kill is satisfied, even though the Defendant did not intend to kill Dennis Lamont Winfield, Jr."

On appeal, Hall argues that the transferred intent instruction was inappropriate because (1) transferred intent only applies if the perpetrator intends to commit a crime against one person and then actually commits the crime against an unintended victim; and (2) there was no evidence that Hall premeditated or intended the murder of the unidentified men with whom he had fought outside the Citgo station. The state argues that there was sufficient evi-

dence to support a transferred intent instruction based on A.M.'s testimony, from which the inference could be drawn that Hall intended and premeditated the murder of one or more of the unidentified men.

■■■ "The decision to give a requested jury instruction lies in the discretion of the trial court and will not be reversed absent an abuse of that discretion." *State v. Palubicki,* 700 N.W.2d 476, 487 (Minn.2005). A party is entitled to an instruction if the evidence produced at trial supports the instruction. *State v. Richardson,* 393 N.W.2d 657, 665 (Minn.1986). A mistaken jury instruction does not require a new trial if the error was harmless. *State v. Kuhnau,* 622 N.W.2d 552, 558 (Minn.2001). An erroneous jury instruction is harmless only if it can be said that, beyond a reasonable doubt, the error had no significant impact on the verdict rendered. *Id.* at 558–59.

■■■ Intent "means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2004). Intent to kill may be inferred from the manner of the killing. *State v. Cooper,* 561 N.W.2d 175, 179 (Minn.1997). Premeditation "means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn.Stat. § 609.18 (2004). "Premeditation is defined as 'a state of mind generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances.' " *State v. Moua,* 678 N.W.2d 29, 39 (Minn.2004) (quoting *State v. Brocks,* 587 N.W.2d 37, 42 (Minn.1998)). Premeditation can be inferred from planning activity, motive, and the nature of the killing. *Id.* at 40. We have said, "In order to prove premeditation, 'the state must always prove that, after the defendant formed the intent to

kill, some *appreciable time* passed during which the consideration, planning, preparation or determination required * * * prior to the commission of the act took place.' " *State v. Netland,* 535 N.W.2d 328, 330 (Minn.1995) (quoting *State v. Moore,* 481 N.W.2d 355, 361 (Minn.1992)).

The doctrine of transferred intent is recognized in Minnesota. *State v. Sutherlin,* 396 N.W.2d 238, 240 (Minn.1986). That doctrine, "derived from the common law, is the principle that a defendant may be convicted if it is proved he intended to injure one person but actually harmed another." 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice—Criminal Law and Procedure* § 44.8 (3d ed.2001); *see also State v. Hough,* 585 N.W.2d 393, 395 n. 1 (Minn.1998) ("The doctrine of transferred intent is frequently applied in cases where the accused intends to kill one person, but, because of bad aim, kills another."). This is because the public policy goal of transferred intent is to hold the actor culpable for his intended actions. 1 Wayne R. La-Fave, *Substantive Criminal Law* § 6.4(d), at 475 (2d ed.2003); *see* McCarr & Nordby, *supra,* § 44.8.

■■■ Transferred intent can apply to first-degree premeditated murder. *See Sutherlin,* 396 N.W.2d at 240. Premeditation will transfer with intent if the perpetrator premeditated the murder of an intended victim but accidentally killed an unintended victim. *See id.* Transferred intent with respect to premeditated murder has been described as follows:

> [I]f *A* without justification aims at *B* with a premeditated and deliberate intent to kill *B* (so that if he should kill *B* he would be guilty of first degree murder) but, missing *B,* he accidentally hits and kills *C, A* is * * * guilty of the first degree murder of *C.*

2 Wayne R. LaFave, *Substantive Criminal Law* § 14.7(a), at 482 (2d ed.2003). We have applied the transferred intent doctrine in accordance with that description. *See State v. Ford,* 539 N.W.2d 214, 219, 229 (Minn.1995) (applying transferred intent doctrine when, in the course of shooting a police officer, defendant wounded a bystander); *State v. Merrill,* 450 N.W.2d 318, 323 (Minn.1990) (holding intent to kill mother is transferable to her fetus); *Sutherlin,* 396 N.W.2d at 239–40 (holding defendant guilty of first-degree premeditated murder through transferred intent when defendant premeditated and intended the murder of one man but accidentally shot and killed a bystander). Thus, in order for the transferred intent doctrine to apply in this case, Hall, in taking the actions that resulted in Winfield's death, must have premeditated and intended to kill someone other than Winfield but accidentally killed Winfield instead.

■■■ The transferred intent instruction permitted the jury to find that the premeditation element was met if they believed Hall intended to kill anyone besides Winfield. Although evidence was presented at trial suggesting that Hall had premeditation toward Winfield, based on the evidence presented a reasonable juror also could have concluded that Hall had premeditation and intent to kill the three unidentified men with whom Hall had fought. Both the defense and the state elicited testimony from A.M. indicating that when Hall left her apartment with his gun he was angry and upset because he was "jumped" by the unidentified men. In fact, on cross-examination, A.M. stated that Hall said nothing about the earlier incident with Winfield. Instead, A.M. testified that after Hall arrived at her apartment, he repeatedly yelled that he had been "jumped" by three men and stated that he was "going to kill 'em." This evidence may have been sufficient to per-

mit a jury to infer that Hall had a premeditated intent to kill another person, one of the unidentified men, when he shot Winfield.

The facts of this case do not justify a transferred intent jury instruction. Here, there was no evidence in the record that Winfield was an unintended victim; indeed, there was no evidence showing that when Hall shot Winfield he intended to kill anyone except Winfield. M.G., the only witness to the incident, testified that Hall shot Winfield at point blank and that nothing separated Hall from Winfield at the time of the shooting. Hall also conceded at trial that he had intentionally killed Winfield. Because our rule for giving the transferred intent instruction requires that at the time of his actions the defendant intended to kill one person but instead accidentally killed another person, we conclude that the trial court erred when it gave the transferred intent instruction.

■■■ Having concluded that the transferred intent instruction was erroneous, we must determine whether the error in giving the instruction was harmless. An erroneous jury instruction is harmless only if it can be said that, beyond a reasonable doubt, the error had no significant impact on the verdict. *Kuhnau,* 622 N.W.2d at 558–59. We can consider the prosecutor's closing argument to determine whether an erroneous instruction had a significant impact on the verdict. *See State v. Olson,* 482 N.W.2d 212, 216 (Minn. 1992).

The prosecutor's closing argument here emphasized that the jury could conclude that Hall premeditated Winfield's murder if the jury determined that he premeditated the murder of "those unidentified men."

If Andre Hall acted with premeditation and with intent to cause the death of another, the element of premeditation

and intent to kill is satisfied even though Andre Hall did not intend to kill Dennis Winfield. This instruction enables you to consider evidence solicited by the Defense by [A.M.]. And that was some suggestion that the Defendant retrieved his handgun and left the apartment, not with the intention to kill Dennis Winfield, but to kill those unidentified men who jumped him after leaving the gas station.

Either way, ladies and gentlemen, as the instruction reads, *if he left with that intent and was thinking about it before he actually acted, even though the ultimate target was Dennis Winfield, premeditation—the element of premeditation is satisfied.*

(Emphasis added.) The erroneous instruction, particularly when viewed in light of the prosecutor's closing argument, instructed the jury that it did not have to find that Hall premeditated Winfield's murder. The verdict could have been based on the premeditated murder "of another." In allowing the jury to find Hall guilty of first-degree premeditated murder without finding that Hall premeditated the actual murder, the state was relieved of its burden of proving premeditation beyond a reasonable doubt.

We have consistently held that when an erroneous jury instruction eliminates a required element of the crime this type of error is not harmless beyond a reasonable doubt. In *Kuhnau*, we held that a jury instruction on conspiracy to commit the crime of sale of a controlled substance was error when the court did not include in the instruction the language requiring that the defendant "knew or believed that the substance was a controlled substance." 622 N.W.2d at 558 (holding that the instruction was erroneous because it "did not require the jury to find all of the same elements of the substantive crime that were contained

in the instructions on the other similar sale counts the jury had under consideration."). Because the instruction allowed the jury to reach a verdict of guilty without finding every required element of the crime, we held that the error was not harmless. *Id.* at 559. In *State v. Williams,* we reversed a criminal conviction because an improper jury instruction constituted a mandatory presumption, thus relieving the state of its burden of proving beyond a reasonable doubt every element of the charged crime. 324 N.W.2d 154, 160 (Minn.1982). In *Olson,* we held that a trial court erroneously instructed the jury on a "permissive inference," namely that the jury could infer knowing possession of a controlled substance based on certain facts in evidence. 482 N.W.2d at 215. In applying the harmless error analysis in that case, we said: "Although defendant *probably* would have been convicted in any event, we cannot conclude *beyond a reasonable doubt* that he would have been convicted in any event." *Id.* at 216.

The facts of this case require the same conclusion. Hall conceded at trial that he was guilty of second-degree intentional murder; the only element the state had to prove was the element of premeditation. Because the transferred intent instruction pertained directly to the element of premeditation and because that instruction relieved the jury of its obligation to find that the element of premeditation was satisfied, the instruction was not harmless. Moreover, although there was evidence that Hall premeditated Winfield's murder, we cannot conclude *beyond a reasonable doubt* that Hall would have been convicted of first-degree premeditated murder without the erroneous transferred intent instruction.

Reversed and remanded for a new trial.

PAGE, Justice (dissenting).

I respectfully dissent. In reversing Hall's conviction, the court concludes that the trial court's error in instructing the jury on transferred intent was not harmless because it relieved the state of its burden of proof as to the required element of premeditation. That conclusion is wrong.

Given Hall's concession that he intended to kill Winfield and the fact that at the time of Winfield's killing the men with whom Hall had fought earlier were not in the vicinity, the only issue for the jury to decide was whether Hall premeditated Winfield's killing. Premeditation "means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn.Stat. § 609.18 (2004). "Premeditation is defined as 'a state of mind generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances.' " *State v. Moua*, 678 N.W.2d 29, 39 (Minn.2004) (quoting *State v. Brocks*, 587 N.W.2d 37, 42 (Minn.1998)). Premeditation can be inferred from planning activity, motive, and the nature of the killing. *Id.* at 40. We have said, "In order to prove premeditation, 'the state must always prove that, after the defendant formed the intent to kill, some *appreciable time* passed during which the consideration, planning, preparation or determination required * * * prior to the commission of the act took place.' " *State v. Netland*, 535 N.W.2d 328, 330 (Minn.1995) (quoting *State v. Moore*, 481 N.W.2d 355, 361 (Minn.1992)). Thus, it is clear from the statutory definition of "premeditation" and our case law that premeditation has two predicates— intent and an act. Absent either intent or an act, premeditation cannot be found.

We have recognized three categories of evidence relevant to an inference of pre-meditation: (1) planning activity, for example, evidence regarding how or when the defendant retrieved or obtained the weapon; (2) motive evidence, that is, " 'facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred' "; and (3) evidence regarding the nature of the killing, for example, the number of shots and whether the defendant shot within close range. *Moua*, 678 N.W.2d at 40–41 (quoting *Moore*, 481 N.W.2d at 361).

When determining whether the erroneous instruction was harmless, we must consider the instruction in its entirety. *State v. Ihle*, 640 N.W.2d 910, 916 (Minn. 2002) (explaining that to determine whether jury instructions fairly and adequately explain the law of the case, they must be viewed in their entirety). We presume that the jury followed the instructions as given. *State v. Budreau*, 641 N.W.2d 919, 926 (Minn.2002) (recognizing the court's presumption that jurors follow the court's instructions). In this case, the trial court gave the following instruction on premeditation and intent.

The elements of murder in the first degree are, first, the death of Dennis Lamont Winfield, Jr. must be proven. Second, the Defendant caused the death of Dennis Lamont Winfield, Jr. Third, the Defendant acted with premeditation and with the intent to kill Dennis Lamont Winfield, Jr. or another person.

Premeditation means that the Defendant considered, planned, prepared for, or determined to commit the act before the Defendant committed it. Premeditation, being a process of the mind, is wholly subjective and, hence, not susceptible to proof by direct evidence. It may be inferred from all the circumstances surrounding the event. It is not necessary that premeditation exist for any specific length of time. A premeditated

decision to kill may be reached in a short period of time. However, a[n] unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated.

In order to have had an intent to kill, the Defendant must have acted with the purpose of causing death, or the Defendant must have believed that the act would have that result.

If the Defendant acted with premeditation and with the intent to cause the death of another, the element of premeditation and intent to kill is satisfied, even though the Defendant did not intend to kill Dennis Lamont Winfield, Jr.

Fourth, the Defendant's act took place on or about October 5, 2004 in Hennepin County.

Viewing the instructions in their entirety and assuming, as we must, that the jury followed the instructions, I conclude that the error in giving the transferred intent instruction was harmless beyond a reasonable doubt.

The doctrine of transferred intent is recognized in Minnesota. *State v. Sutherlin,* 396 N.W.2d 238, 240 (Minn.1986). Transferred intent can apply to first-degree premeditated murder. *See id.* at 239–40. Premeditation will transfer with intent if the perpetrator premeditated the murder of an intended victim but accidentally or mistakenly killed an unintended victim. *See id.* at 240. Transferred intent with respect to premeditated murder has been described as follows:

[I]f *A* without justification aims at *B* with a premeditated and deliberate intent to kill *B* (so that if he should kill *B* he would be guilty of first degree murder) but, missing *B,* he accidentally hits and kills *C, A* is * * * guilty of the first degree murder of *C.*

2 Wayne R. LaFave, *Substantive Criminal Law* § 14.7(a), at 482 (2d ed.2003). We have applied the transferred intent doctrine in accordance with that description. *See State v. Ford,* 539 N.W.2d 214, 219, 229 (Minn.1995) (applying transferred intent doctrine when, in the course of shooting a police officer, defendant wounded a bystander); *State v. Merrill,* 450 N.W.2d 318, 323 (Minn.1990) (holding intent to kill mother is transferable to her fetus); *Sutherlin,* 396 N.W.2d at 239–40 (holding defendant guilty of first-degree premeditated murder through transferred intent when defendant premeditated and intended the murder of one man but accidentally shot and killed a bystander). Thus, in order for the transferred intent doctrine to apply in this case, Hall, in shooting and killing Winfield, must have premeditated and intended to kill someone other than Winfield but accidentally or mistakenly killed Winfield instead. But that is not what happened here. As the court explained, it was error to give the instruction because "there was no evidence in the record that Winfield was an unintended victim; indeed, there was no evidence showing that when Hall shot Winfield he intended to kill anyone except Winfield." For the same reason, the error in giving the instruction was harmless.

The court concludes that the error was not harmless because there is evidence in the record from which the jury could have inferred that between the time Hall retrieved the gun and arrived at the Citgo station he considered, planned or prepared for, or determined, that is, he premeditated, the killing of the unidentified men. The court concludes that the jury may then have used the premeditation relating to the unidentified men to convict Hall of the premeditated murder of Winfield without making a determination as to whether Hall premeditated Winfield's killing. The court's conclusion ignores our definition of "premeditation," our law on transferred

intent, the instructions actually given, our presumption that juries follow those instructions, and the factual circumstances of Winfield's killing.

Here, the trial court's instruction on premeditation and intent relating to Winfield accurately stated the law. At the same time, under the erroneously given transferred intent instruction, transferred intent would have come into play and the elements of premeditation and intent to kill would have been satisfied only "*if* the Defendant acted with premeditation and with the intent to cause the death of another" (emphasis added). There is no evidence from which the jury could have found both intent and an act with respect to the unidentified men. Clearly, after Hall returned to the Citgo station, no act of any kind with respect to the unidentified men took place. Therefore, the jury could not have found that Hall premeditated the killing of the unidentified men. And, to state the obvious, there being no premeditation with respect to the unidentified men, there was no premeditation that could be transferred and used to satisfy the element of premeditation with respect to Winfield. There was, however, ample evidence to support a jury finding that Hall "acted" with intent with respect to Winfield and from which it could be inferred that Hall premeditated Winfield's killing.

The evidence demonstrating that Hall intended to kill Winfield and no one else is striking. Hall conceded at trial that at the time of the act referred to, i.e., the killing of Winfield, he intended to kill Winfield and not the unidentified men. Moreover, the record supports that conclusion even without Hall's concession. There is nothing in the record showing that the unidentified men were anywhere in the vicinity at the time Winfield was shot, nor is there anything in the record from which it could be inferred that, at the time of the shoot-

ing, Hall intended to kill anyone other than Winfield or that he killed Winfield by accident or mistake. Indeed, after Hall returned to the Citgo station, the evidence shows that he did not act, either with or without premeditation, to carry out any intentional killing with respect to the unidentified men.

Rather, the record shows that Winfield and M.G. were taking garbage to the dumpster when Hall arrived at the Citgo station, crossed the street, walked across the station's apron, walked up to Winfield, displayed a gun, shot Winfield multiple times from point-blank range, and then fled. In that there was nothing before the jury that the jury could have used to reach the conclusion that, at the time Hall shot and killed Winfield, Hall intended to shoot and kill any of the unidentified men, the jury could not have concluded that Hall acted with intent to kill the unidentified men when he killed Winfield. Because the jury could not have concluded that Hall acted with intent to kill the unidentified men, the jury could not have used the theory of transferred intent as the basis for finding that Hall premeditated Winfield's murder.

In addition to evidence of Hall's intent to kill Winfield, there is strong evidence from which the jury could infer that, after Hall formed the intent to kill Winfield, some appreciable amount of time passed during which Hall considered, planned or prepared for, or determined to kill Winfield before acting to kill him. Upon his return to the Citgo station, Hall crossed the street to the station, crossed the station's apron, walked up to Winfield, pulled out his weapon, fired multiple shots at Winfield from a close range, and then fled. That Hall acted with premeditation as to Winfield can also be inferred from the events that occurred before he returned to the Citgo station, including the confronta-

tion between Hall and Winfield during which Hall threatened Winfield, saying "[t]his bulletproof glass isn't [going] to save you," and Winfield locking Hall in the Citgo station until Hall returned the items he had originally intended to buy. Given the evidence, the jury could only have concluded that Hall premeditated Winfield's murder and could not resort to transferring premeditation relating to someone other than Winfield as the basis for satisfying the premeditation element. Therefore, the trial court's error in giving the transferred intent instruction was harmless.[1]

The trial proceedings support that conclusion. The central focus of the trial, and all of the evidence produced at trial, except for A.M.'s brief testimony that Hall was angry at the unidentified men when he returned to the apartment and retrieved the gun, was directed at establishing that Hall premeditated and intended Winfield's murder. While it is true that during closing argument the prosecutor misstated the law as well as the transferred intent instruction given by the court when he argued that the jury could find that Hall premeditated Winfield's murder by finding that Hall premeditated the murder of the unidentified men, that argument consisted of 16 lines in the middle of the state's 21-page closing argument. The state's argument began with the prosecutor quoting Hall's threat to Winfield that the bulletproof glass would not protect him. The rest of the argument consisted of the facts surrounding the shooting of Winfield, as they related to the elements of the second-degree intentional murder, premeditated first-degree murder with respect to Win-

field, and the fact that Hall's intoxication defense was not supported by the record.

Because I conclude that the trial court's error in giving the transferred intent instruction was harmless beyond a reasonable doubt, I would affirm Hall's convictions.

ANDERSON, RUSSELL A., Chief Justice (dissenting).

I join in the dissent of Justice Page.

ANDERSON, PAUL H. (dissenting).

I join in the dissent of Justice Page.

---

1. I also note that, for the erroneously given instruction to have harmed Hall, the jury would have had to reject or ignore all of the evidence from which it could be inferred that Hall premeditated Winfield's murder. Given the extrinsic evidence in the record from which it could be inferred that Hall premeditated Winfield's murder, it is highly unlikely that the jury rejected or ignored each and every piece of that evidence in finding that Hall premeditated Winfield's murder.