*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0275**

State of Minnesota,
Respondent,

vs.

Sidney Phillip Monette,
Appellant.

**Filed May 28, 2024**
**Affirmed in part, reversed in part, and remanded**
**Halbrooks, Judge**[*]

Clay County District Court
File No. 14-CR-22-2007

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brain J. Melton, Clay County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Frisch, Judge; and Halbrooks, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Following a jury trial, appellant challenges his convictions of aggravated robbery and threats of violence. He contends that the district court abused its discretion by omitting an element of the aggravated-robbery charge from the jury instructions, entitling him to a new trial on that offense. He also asserts that his conviction of threats of violence should be reversed because there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he threatened to commit a future act of assault-fear. Because we conclude that the aggravated-robbery jury instruction was erroneous and that the error was not harmless and because we conclude that there was sufficient evidence presented to support appellant's conviction of threats of violence, we affirm in part, reverse in part, and remand for a new trial on the charge of aggravated robbery.

## FACTS

On May 13, 2022, appellant Sidney Phillip Monette stole $205.92 worth of merchandise from Walmart. As he was leaving the store, he threatened to shoot an employee who was asking to see his receipt. Monette was subsequently charged with one count of second-degree aggravated robbery, Minn. Stat. § 609.245, subd. 2 (2020), and one count of threats of violence, Minn. Stat. § 609.713, subd. 1 (2020). Over the course of a two-day jury trial, the following evidence was presented:

J.J., an asset-protection worker at Walmart, testified first for respondent State of Minnesota. As an asset-protection worker, J.J.'s job was to walk around the store and "apprehend shoplifters." J.J. testified that, on the day in question, he observed a person—

later identified as Monette—acting suspiciously in the luggage aisle. He explained that Monette repeatedly "look[ed] up and down the aisle" before grabbing a duffle bag off the shelves without looking at it and putting it in his cart. J.J. stated that after seeing this, he called D.H., another asset-protection worker, and requested that D.H. follow Monette around the store.

D.H. testified that after J.J.'s call, he "started observ[ing]" Monette, always remaining between 10 to 20 feet away to avoid detection. D.H. explained that he observed Monette take various items off the shelves and place them directly into the duffle bag he had previously grabbed. According to D.H., this was "[un]usual behavior for a shopper." And because Monette was "moving pretty quickly [and] pretty erratically through the store," D.H. believed that Monette was "going to actually walk out with the merchandise."

At some point, Monette placed the duffle bag on his back like a backpack. Seeing this, D.H. testified that he called J.J. and directed him to watch one of the main Walmart exits while D.H. watched the other himself. But D.H. explained that before either of them got to the exits, they were alerted that Monette had already walked out of the store without paying. D.H. did not see Monette leave the store but testified that he saw him get into "a black minivan" and drive away.

D.H. also testified about how he assisted the police with their investigation. He explained that he provided officers with multiple surveillance videos showing Monette as he moved through the store that day and with still images taken from those videos clearly showing Monette's face. The jury was shown copies of both the videos and the still images.

And finally, D.H. stated that he was in charge of totaling the value of what was stolen, which came to $205.92.

A.A., a third Walmart employee, testified next. A.A. explained that while Monette was in the store being followed by J.J. and D.H., he was in the parking lot collecting shopping carts. A.A. said that, as he walked back into the store, he heard over his radio a description of an individual who was on asset protection's radar. A.A. testified that he subsequently saw someone matching that description exiting the store and that he "asked . . . for [the individual's] receipt." In response, Monette "avoided [him] there and kept trying to . . . head out of the store." According to A.A., after repeating the request to see Monette's receipt, Monette "made kind of a sweeping motion[,] . . . lifting up his shirt, sweeping towards his waistband . . . where . . . an unholstered firearm would usually . . . be kept." A.A. testified that, while he never saw a gun as Monette made this sweeping motion, Monette said, "I'm gonna shoot you"—a threat he then repeated "three or four times."

The state's last witnesses were the two police officers who responded in the wake of the incident. The officers explained that, because pursuing the "black minivan" was deemed to be a safety risk, they did not arrest Monette right away. Instead, the officers sent the images taken from the Walmart surveillance video to other officers in neighboring areas in an attempt to identify Monette. The officers testified that this strategy proved successful and that Monette was identified and arrested a month later.

Monette did not call any witnesses and did not testify on his own behalf. The jury found Monette guilty of both aggravated robbery and threats of violence. He was sentenced to 39 months in prison.[1]

This appeal follows.

**DECISION**

**I.     The district court abused its discretion by omitting an element of aggravated robbery from the jury instructions and, as this error was not harmless, we reverse and remand for a new trial on this count.**

Monette first argues that the district court abused its discretion and committed reversible error by omitting an element of aggravated robbery from the jury instructions. Specifically, he claims that the district court failed to instruct the jury that, to find him guilty of aggravated robbery, it must find, in part, that he took property "from [a] person or in the presence of another." *See* Minn. Stat. §§ 609.245, subd. 2, .24 (2020). He claims he is entitled to a new trial on the charged offense because this error was not harmless. We agree.

"District courts are allowed considerable latitude in selecting language used in the jury charge and determining the propriety of a specific instruction." *Morlock v. St. Paul Guardian Ins. Co.*, 650 N.W.2d 154, 159 (Minn. 2002). Given that the district court has "broad discretion in determining jury instructions[,] . . . [appellate courts] will not reverse in the absence of abuse of discretion." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147

---

[1] Monette was initially sentenced to 45 months in prison. His sentence was reduced after he filed a motion to correct his sentence on the basis that the criminal-history score used to calculate it was incorrect.

(Minn. 2002). A district court abuses its discretion if the instructions given to the jury "confuse, mislead, or materially misstate the law." *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014). However, an erroneous jury instruction does not automatically require a new trial. *State v. Hall*, 722 N.W.2d 472, 477 (Minn. 2006). If "it can be said that, beyond a reasonable doubt, the error had no significant impact on the verdict rendered," then it is considered harmless, and an appellate court must affirm the conviction. *Id.*

Appellate courts evaluate jury instructions "as a whole to determine whether they correctly state the law in language that can be understood by the jury." *Vang*, 847 N.W.2d at 261. The instructions must "define the crime charged" by "explain[ing] the elements of the offense rather than simply [reading] statutes." *State v. Kuhnau*, 622 N.W.2d 552, 555-56 (Minn. 2001). And to determine whether the district court instructed the jury on all the elements of the crime charged, reviewing courts must interpret the relevant criminal statute. *State v. Stay*, 935 N.W.2d 428, 430 (Minn. 2019).

"Statutory interpretation is a question of law that we review de novo." *Id.* The first step of statutory interpretation is to determine whether the statute's language is ambiguous. *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013). To determine if a statute is ambiguous, appellate courts "construe the statute's words and phrases according to their plain and ordinary meaning." *Id.* (quotation omitted); *see also* Minn. Stat. § 645.08(1) (2022). If the language of the statute is unambiguous, courts "apply the statute's plain meaning." *Stay*, 935 N.W.2d at 430.

Monette was charged with second-degree aggravated robbery. A defendant is guilty of second-degree aggravated robbery if, "while committing a robbery," they "impl[y], by

6

word or act, possession of a dangerous weapon." Minn. Stat. § 609.245, subd. 2. A defendant is guilty of "committing a robbery" if,

> having knowledge of not being entitled thereto, take[] personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property.

Minn. Stat. § 609.24 (2020).

At trial, and over Monette's objection, the district court explained the elements of second-degree aggravated robbery to the jury as follows:

> The elements of the crime are first, the defendant took property from Walmart. Second, the defendant knew that he was not entitled to the property. To know requires only that the defendant believes that the specified fact exists. Third, the defendant used force or the threat of imminent force against [A.A.] to overcome resistance to the taking or carrying away of the property. Fourth, the defendant implied, by word or act, the possession of a dangerous weapon.
>
> . . . .
>
> Fifth, the defendant's act took place on or about May 13, 2022, in Clay County.

On appeal, Monette argues that the district court abused its discretion by instructing the jury that it had to find that the defendant "took property from Walmart." According to Monette, because "Walmart is . . . not a person," describing the first element of aggravated robbery in this way effectively omitted the requirement that the jury find he took property "from [a] person or in the presence of another." *See* Minn. Stat. § 609.24.

7

"Person" is not defined by statute. "In determining the plain meaning of the statute, the court may turn to dictionary definitions for terms not otherwise defined in the statute." *In re Moratzka, Tr. of Nancy L. Mayen Residual Tr.*, 988 N.W.2d 42, 47 (Minn. 2023). "[P]erson" is consistently defined by dictionaries to only include "human being[s]." *See Black's Law Dictionary* 1378 (11th ed. 2019) (defining "person"); *The American Heritage Dictionary of the English Language* 1317 (5th ed. 2018) (defining "person" as "a living human being"). And nothing in the robbery statutes indicates that the phrase "from the person or in the presence of another" is meant to include a business. Therefore, describing the first element of aggravated robbery to the jury as a defendant taking property "from Walmart," was a material misstatement of the law. *See Vang*, 847 N.W.2d at 261.

The state makes two arguments as to why the district court's jury instructions were not erroneous. First, citing *State v. Bowen*, 921 N.W.2d 763, 768 (Minn. 2019), and *State v. Schachtel*, 196 N.W. 674, 675 (Minn. 1923), it asserts that "tak[ing] personal property from the person or in the presence of another" has already been interpreted to "include a business." Second, it argues that a century of Minnesota caselaw supports the proposition that taking property "from a person or in the presence of another" has "acquired a specialized meaning that would include . . . a business entity." Neither argument is persuasive.

*Bowen* and *Schachtel* address the "personal property" element of a robbery charge, not the requirement that such property have been taken from a person or in the presence of another. *See Bowen*, 921 N.W.2d at 768 ("In sum, the plain meaning of Minnesota Statutes section 609.24 supports only one reasonable interpretation of the phrase 'personal

8

property': property that is not real property. Because it is undisputed that [the defendant] took the bottle of brandy from the liquor store by using force, the State presented sufficient evidence to support [the defendant]'s robbery conviction."); *Schachtel*, 196 N.W. at 675 ("Under modern statutes defining robbery, the right of ownership or control of stolen goods is immaterial, so long as it is not in the robber."). Thus, they are not relevant to our analysis here. And, contrary to the state's assertion, a review of Minnesota caselaw does not support the argument that the element at issue here has "acquired a specialized meaning that would include . . . a business entity." The cases relied on by the state to argue this point all involve situations where property was stolen from a person or from a business *in the presence of a person.*[2]

Accordingly, the jury was never instructed that it had to find that Monette took property "from [a] person or in the presence of another." But our analysis does not end

---

[2] *See State v. Solomon*, 359 N.W.2d 19, 20 (Minn. 1984) ("The charges were based on defendant's participation, with two accomplices, in the armed taking or attempted taking of money *from the clerk* of the Brooks Superette." (emphasis added)); *State v. Duncan*, 250 N.W.2d 189, 192 (Minn. 1977) (explaining that the defendant was charged with aggravated robbery after he beat a gas station attendant while trying to steal money from the register); *State v. Sandve*, 156 N.W.2d 230, 229 (Minn. 1968) (explaining that "[a] man, later identified as [the defendant], walked into the hotel with his right hand in his jacket pocket and said to [a desk clerk], 'This is a stickup'"); *State v. Bonga*, 153 N.W.2d 127, 128 (Minn. 1967) (explaining that the defendant was charged with simple robbery after he stole money from a cash register in the presence of a pharmacist); *State v. Sorg*, 144 N.W.2d 783, 785-86 (Minn. 1966) (affirming a robbery conviction where the defendant took money and other items from a bar in the presence of bar patrons); *Schachtel*, 196 N.W. at 674 (explaining that the defendant was charged "with the felonious taking of the property of [a store], in the presence and against the will of [another]"); *Duluth St. Ry. Co. v. Fid. & Deposit Co. of Md.*, 161 N.W. 595, 595-96 (Minn. 1917) (concluding that "if the thief jostles his victim for the purpose of diverting his attention and, while his attention is so diverted, picks his pockets, the crime is robbery").

there. We must now determine if this erroneous jury instruction was harmless. *See Hall*, 722 N.W.2d at 477.

While "the omission of an element of a crime in a jury instruction does not automatically require a new trial," the supreme court has said that "a thorough examination of the record [must be conducted] to determine whether the omission of an element of a charged offense from the jury instruction was sufficiently prejudicial in light of the standard of review." *State v. Watkins*, 840 N.W.2d 21, 28-29 (Minn. 2013); *see also State v. Mouelle*, 922 N.W.2d 706, 718 (Minn. 2019) (citing *Watkins* and stating, "[a]n omission of an element of the crime charged is not always prejudicial"). When undertaking this review, appellate courts may consider whether "(1) the defendant contested the omitted element and submitted evidence to support a contrary finding, (2) the State submitted overwhelming evidence to prove that element, and (3) the jury's verdict nonetheless encompassed a finding on that element." *Watkins*, 840 N.W.2d at 29. This list, however, is not exhaustive and "it does not necessarily follow that each must be satisfied." *State v. Peltier*, 874 N.W.2d 792, 801 (Minn. 2016).

Here, the jury instruction given not only omitted an element of the charged crime, but also materially misstated the law by instructing the jury that it need only find that Monette "took property from Walmart." The jury was never given the opportunity to find that Monette took the Walmart merchandise from "a person" or "in the presence of another." And we are not convinced that the evidence presented at trial "overwhelming[ly] . . . prove[d] that element." Both asset-protection workers who testified explained that they never directly interacted with Monette and that they maintained a distance of at least ten

10

feet away in an effort to avoid detection. Moreover, the surveillance video shows that Monette was otherwise left alone until he exited the store. Under an abuse-of-discretion standard, we cannot say that "beyond a reasonable doubt, the error had no significant impact on the verdict rendered." *See Hall*, 722 N.W.2d at 477; *see also Watkins*, 840 N.W.2d at 21, 28-29 ("[A] thorough examination of the record [must be conducted] to determine whether the omission of an element of a charged offense from the jury instruction was sufficiently prejudicial *in light of the standard of review*." (Emphasis added)). We therefore reverse Monette's conviction of aggravated robbery and remand for a new trial on that charge alone.

**II.    Sufficient evidence was presented at trial for the jury to find Monette guilty of threats of violence beyond a reasonable doubt.**

Monette next claims that we must reverse his conviction of threats of violence because the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he threatened to commit a future act of assault-fear, a required element of the charged crime.

In a criminal case, due process requires the prosecution to prove every element of the charged crime beyond a reasonable doubt. *State v. Culver*, 941 N.W.2d 134, 142 (Minn. 2020). To be found guilty of threats of violence, a defendant must "threaten[], directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror." *State v. Mrozinski*, 971 N.W.2d 233, 239 (Minn. 2022) (alterations in original) (emphasis omitted) (quoting Minn. Stat. § 609.713, subd. 1). A threat "may be communicated by actions or words," *State v. Smith*,

11

825 N.W.2d 131, 135 (Minn. App. 2012), is made with "an intention to injure another or his property," and has a "reasonable tendency to create apprehension that its originator will act according to its tenor." *State v. Schweppe*, 237 N.W.2d 609, 613 (Minn. 1975) (quotation omitted). A "crime of violence" is defined as any "'violent crime' in section 609.1095, subdivision 1, paragraph (d)." Minn. Stat. § 609.713, subd. 1. And within the context of the threats-of-violence statute, the supreme court has explained that "the threat[] must be to commit a *future* crime of violence which would terrorize a victim." *State v. Murphy*, 545 N.W.2d 909, 916 (Minn. 1996). "It is the future act threatened, as well as the underlying act constituting the threat, that the statute is designed to deter and punish." *Id.*

When evaluating a sufficiency-of-the-evidence claim, appellate courts view the evidence "in the light most favorable to the verdict, and [assume] that the fact-finder disbelieved any evidence that conflicted with the verdict." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016). But the level of scrutiny applied when conducting a sufficiency review depends on whether the elements of an offense were supported by direct or circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).

The evidence offered in support of Monette's threats-of-violence conviction was A.A.'s testimony that he heard Monette say, "I'm gonna shoot you," multiple times and observed him gesturing toward his waistband as if to indicate he had a gun. This is direct evidence. *See State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) ("[D]irect evidence is evidence that is based on personal knowledge or observation." (Quotation omitted)). When an element is supported by direct evidence, an appellate court's review is limited to "a painstaking analysis of the record to determine whether the evidence, when viewed in a

12

light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (quotation omitted).

The jury was instructed that the crime of violence Monette threatened to commit was second-degree assault, which can be committed in two different ways. *See State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012) (discussing the difference between assault-fear and assault-harm); Minn. Stat. § 609.222 (2020). Here, the jury was told that Monette threatened to commit assault-fear. "A person commits the offense of assault-fear through 'an act done with intent to cause fear in another of immediate bodily harm or death.'" *Id.* (quoting Minn. Stat. § 609.02, subd. 10(1) (2010), which defines second-degree assault). Given this jury instruction, Monette argues that we can only consider whether the state's evidence is sufficient to prove that he threatened to commit a future act of assault-fear.

We previously rejected this argument in *State v. Smith,* No. A19-0658, 2020 WL 1983210, \*3 (Minn. App. Apr. 27, 2020).[3] In *Smith*, a defendant charged with threats of violence argued that because the jury was instructed that the predicate offense he threatened to commit was assault-fear, "the sufficiency of the evidence must therefore be analyzed in [that] framework." 2020 WL 1983210, at \*3. We disagreed, stating that a sufficiency challenge "is not reviewed in the context of the instructions that the jury receives about the elements of the offense." *Id.* (relying on *Musacchio v. United States*, 577 U.S. 237, 243 (2016), which reasoned that "[a] reviewing court's limited determination on sufficiency

---

[3] *Smith* is nonprecedential and therefore nonbinding, but we rely on it here for its persuasive value. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

review . . . does not rest on how the jury was instructed"); *see also State v. Nelson*, No. A18-1482, 2019 WL 4164847, at *2 n.1 (Minn. App. Sept. 3, 2019) ("Appellant's argument that his guilt can be based only on his intent to commit the crime of theft because that is how the district court instructed the jury is based on a false premise. Our sufficiency-of-the-evidence analysis does not depend on the district court's instruction to the jury."); *State v. Hicks*, No. A20-0504, 2021 WL 2528438, at *4 (Minn. App. June 21, 2021) ("[W]hen evaluating the sufficiency of the evidence, we are not bound by either the state's theory of the case at trial or the jury instructions. *Cf. Musacchio v. United States*, 136 S. Ct. 709, 715 (2016)."); *State v. Chatman*, No. A18-1410, 2019 WL 3407180, at *3 (Minn. App. July 29, 2019) (citing *Musacchio* and stating that "appellant's assertion that an assault-harm theory cannot support the verdict because the district court did not instruct the jury on assault-harm is misguided" because "the charged offense is second-degree assault").

Assault can also be accomplished by a defendant intentionally inflicting bodily harm on another. *Fleck*, 810 N.W.2d at 308 (discussing assault-harm and quoting Minn. Stat. § 609.02, subd. 10(2) (2010)). In *Smith*, a defendant waived a pocketknife at his cousin while standing four feet away and demanded money. 825 N.W.2d at 135-36. On appeal, the defendant argued the evidence could not support a conviction of terroristic threats[4] because his conduct "conveyed a threat of immediate violence because it occurred during an ongoing confrontation" and that "an appreciable break in time is required before conduct

---

[4] When *Smith* was decided, the statute at issue referred to what is now known as "threats of violence," as "terroristic threats." *See* Minn. Stat. § 609.713, subd. 1. (2012).

becomes a threat of future violence." *Id.* at 136. We rejected that argument, reasoning that although "the Minnesota Supreme Court stated in *Murphy* that the [threats of violence] statute prohibits threats of future violence, it has never defined a specific amount of time that must pass before a threat of immediate violence becomes a threat of future violence." *Id.* We concluded the defendant's "conduct constituted a threat to assault [his cousin] with the knife in the future if [the cousin] did not comply with his demand for money," and we affirmed the defendant's conviction. *Id.*

The same can be said about Monette's conduct. The state presented evidence that Monette threatened to shoot A.A in the future if A.A. did not comply with his demand to let him walk out of the Walmart without showing his receipt. We conclude that the evidence presented by the state is sufficient to prove beyond a reasonable doubt that Monette threatened to commit a future second-degree assault on A.A. Accordingly, we affirm Monette's conviction of threats of violence.

**Affirmed in part, reversed in part, and remanded.**